**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 98-50860**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**BLASA GONZALEZ,**

**Defendant-Appellant.**

---

Appeal from the United States District Court
for the Western District of Texas

---

September 24, 1999

Before POLITZ, DeMOSS, and BENAVIDES, Circuit Judges.

DeMOSS, Circuit Judge:

Blasa Gonzalez was stopped on a rural Texas road near Marfa, Texas, and found to be transporting 64.5 pounds of marijuana. Gonzalez was subsequently charged with importing the marijuana, in violation of 21 U.S.C. §§ 952(a) and 960 (a)(1), and with possessing the marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Gonzalez filed a motion to suppress, arguing that the *Terry* stop leading to her arrest and the seizure of the marijuana was not supported by reasonable suspicion and that

the search of her vehicle was not supported by probable cause.  The district court received evidence in a hearing on the motion and entered a comprehensive order denying Gonzalez' motion to suppress. The jury returned a guilty verdict on the possession count only, and Gonzalez was sentenced to 27 months confinement.  This appeal ensued.

Gonzalez does not challenge any aspect of her trial or sentence.  Rather, Gonzalez appeals only the district court's denial of her motion to suppress.  For the reasons that follow, we affirm.

**FACTUAL BACKGROUND**

In March 1998, Texas Border Patrol Agents Pigg and Baker were assigned to the Border Patrol station in Marfa, Texas.  Marfa is located on Highway 67 between 65 and 70 miles north of the International Port of Entry at Presidio, Texas.  The stretch of highway between the entry port at Presidio and Marfa does not intersect with other highways or frequently traveled roads.  To the contrary, there are apparently only two roads leading off that stretch of road, both of which turn into gravel or dirt roads and also lead to the border.  Aside from the port of entry at Presidio, there are no other official points of entry within 100 miles. There are, however, many shallow crossings of the Rio Grande River that are routinely used by aliens seeking to illegally enter the

2

United States and by persons seeking to smuggle narcotics into the United States. As a result, Highway 67 is often used for transporting illegal aliens or smuggling narcotics. *See **United States v. Villalobos***, 161 F.3d 285, 289 (5th Cir. 1998).

On March 5, 1998, Agents Pigg and Baker were assigned to monitor the traffic on Highway 67. The agents began their shift at 6:00 a.m., positioning their marked border patrol car on Highway 67 about one mile south of Marfa and three miles north of a closed border patrol checkpoint. *See **Villalobos***, 161 F.3d at 285.

Both agents had significant experience in the area and were familiar with the relatively few vehicles that commonly traveled their stretch of Highway 67 in the morning. Agent Pigg testified that the normal traffic consisted mainly of farm workers traveling to local tomato farms and ranchers driving their children to school. The agents were also in possession of at least two BOLO ("be on the lookout") reports. One BOLO told the agents to be on the lookout for an individual named Jeremy Sambugard. The BOLO stated that Sambugard was from Illinois, might be driving a Honda Accord, and was suspected of being "involved in the smuggling of contraband from Mexico to the U.S." The BOLO instructed the agents to inspect the vehicle for contraband if it was spotted. The second BOLO advised agents to be on the lookout for a Honda Accord with Illinois plates marked C75S473, registered to Sambugard. The second BOLO also informed agents that the license plate may have

3

been changed. Both BOLOS were issued by Special Customs Agent Steve Coker and were based on information received from a confidential informant almost two months before, in January 1998.

Shortly before 7:00 a.m., the agents observed a maroon Honda Accord with Illinois plates proceeding northbound on Highway 67. Neither agent recognized the vehicle as being one routinely seen in the area. Agent Pigg recalled the BOLO for a vehicle with Illinois plates. As the two agents began following the Honda, Agent Pigg confirmed that there was a BOLO for a Honda Accord with Illinois plates. The license plate number of the maroon Honda was C752473, only one digit different than C75S473, the number reported in the BOLO. While following Gonzalez, the agents ran the license plate and learned that the Honda was registered under the name Jeremy Sambugard, the same name listed in the BOLO report. The agents followed the Honda to a location about one mile north of Marfa, where they pulled Gonzalez over using their emergency lights. Gonzalez told Agent Baker that she was a United States citizen driving her boyfriend's car to Dallas. The agents ran Gonzalez' driver's license and determined that it had been suspended. Agent Baker asked Gonzalez whether she would consent to a canine inspection of the vehicle, and she gave her consent. Agent Baker then radioed for a canine unit.

The drug dog alerted to the presence of narcotics in the back seat near the trunk. Border Patrol Agent Bates, the dog handler, testified that he and Agent Pigg observed distinctive orange spots

4

on the back seat where the drug dog alerted, on the dashboard, and in the trunk, which in his experience indicated the use of a silicone sealant. Agent Pigg then released the back seat hatch, which revealed that the trunk area was higher than it should have been and that the trunk contained a trap door. Beneath that trap door, agents recovered the 64.5 pounds of marijuana. Gonzalez was arrested and taken to the Marfa Border Patrol station where she was interviewed by Customs Special Agent Steve Coker.

## DISCUSSION

The district court's fact findings on a motion to suppress are reviewed for clear error only, while the district court's legal conclusions, including whether there was reasonable suspicion for the stop, are reviewed de novo. *Villalobos*, 161 F.3d at 288. "We have long pitched the standard of review for a motion to suppress based on live testimony at a suppression hearing at a high level." *United States v. Randall*, 887 F.2d 1262, 1265 (5th Cir. 1989). The evidence introduced at the suppression hearing is viewed in the light most favorable to the government, as the prevailing party. *Villalobos*, 161 F.3d at 288. Moreover, the district court's denial of the motion to suppress "should be upheld `if there is any reasonable view of the evidence to support it.'" *United States v. Tellez*, 11 F.3d 530, 532 (5th Cir. 1993) (quoting *United States v. Register*, 931 F.2d 308, 312 (5th Cir. 1991)).

Border Patrol agents on roving patrol may stop a vehicle when

5

they are aware of specific articulable facts that, together with the rationale inferences that may be drawn from those facts, reasonably warrant suspicion that the particular vehicle is involved in illegal activities. *See **United States v. Brignoni-Ponce***, 95 S. Ct. 2574, 2582 (1975); ***Villalobos***, 161 F.3d at 288. Reasonable suspicion requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence. *See **United States v. Sokolow***, 109 S. Ct. 1581, 1585 (1989). The validity of a stop depends upon the totality of the circumstances known to the agents making the stop. *Id*. Factors that may be considered include, inter alia: (1) the characteristics of the area in which the vehicle is encountered; (2) the proximity to the border; (3) the usual patterns of traffic on the particular road; (4) the agents' previous experience with traffic in the area; (5) information about recent border crossings in the area; (6) the driver's behavior; and (7) the appearance of the vehicle. *See **Brignoni-Ponce***, 95 S. Ct. at 2582; ***Villalobos***, 161 F.3d at 288.

The district court held that the agents had reasonable suspicion based upon: (1) the time of day and location of the stop; (2) the nearly exact match between the Gonzalez' car and the car described in the BOLO; and (3) the agents' collective experience with traffic in the area of the stop. We agree. The Court has previously recognized that the stretch of Highway 67 between

6

Presidio and Marfa is a "notorious smuggling route." *Villabolos*, 161 F.3d at 289. The area is sparsely populated and border patrol agents may reasonably be familiar with most of the ordinary traffic in the area. *Id.* Moreover, Highway 67 does not provide or permit access to other frequently traveled routes. Indeed, all roads in the area lead directly from the border to Marfa. Based upon the geography of the area, the agents could reasonably conclude that the Honda Accord originated its journey at the border. *See United States v. Inocencio*, 40 F.3d 716, 722 (5th Cir. 1994); *see also Villalobos*, 161 F.3d at 285 (placing the Marfa checkpoint at about 59 miles north of the Texas-Mexico border). The unfamiliar nature of Gonzalez' car, and the notorious and isolated character of the area, factor in favor of the district court's determination that Gonzalez' stop was supported by a reasonable suspicion of criminal activity.

Gonzalez was first observed approximately three miles north of the Marfa checkpoint, or about 62 miles from the border. *See Villalobos*, 161 F.3d at 285. Notwithstanding the fact that Gonzalez was more than the benchmark fifty miles from the border, we have previously relied upon proximity to the border checkpoint as a factor favoring a finding of reasonable suspicion. *See Villabolos*, 161 F.3d at 289. Viewed in the totality of the circumstances, including the geography of the area, Gonzalez' proximity to the border provides some support for the district

7

court's determination that Gonzalez' stop was supported by a reasonable suspicion of criminal activity.

The agents testified they were familiar with normal traffic and became suspicious when they did not recognize the vehicle and noted it was traveling with out-of-state tags. In addition, the agents testified that they were familiar with illegal operations carried out in the area by individuals surreptitiously crossing the Rio Grande River at areas of low water. The agents' knowledge of and experience in the area, while not independently sufficient, is likewise entitled to some weight in our evaluation of whether the stop was supported by reasonable suspicion. In sum, the first through the fourth *Brignoni-Ponce* factors all tend to support the agents' stop.

The sixth and seventh *Brignoni-Ponce* factors, the behavior of the driver and the appearance of the vehicle, do not tend to support the stop in this case. The agents did not claim that Gonzalez slowed down or drove erratically when followed. The agents did not testify that she seemed nervous when stopped. But while there was nothing about Gonzalez herself that was offered to support the agents' suspicion, there was a good bit of specific information about the car she was driving. In the final analysis, it is the BOLO that provides the tailoring that transforms what could be characterized as an unparticularized hunch into a reasonable suspicion.

A tip, even an anonymous tip, may provide the reasonable suspicion necessary to justify an investigatory stop. *Alabama v. White*, 110 S. Ct. 2412, 2415 (1990). Similarly, an alert or BOLO report may provide the reasonable suspicion necessary to justify an investigatory stop. *United States v. Hensley*, 105 S. Ct. 675, 682 (1985). Whether a particular tip or BOLO report provides a sufficient basis for an investigatory stop may depend upon the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale. *See Alabama v. White*, 496 U.S. at 328-32.

The tip in this case was not anonymous. *See White*, 110 S. Ct. at 2415 (comparing the relative weight to be assigned to an anonymous tip as opposed to information received from known and previously reliable informant). To the contrary, Special Customs Agent Steve Coker testified that the informant who provided the information in this case had a proven track record of providing information that led to arrests and seizures of narcotics. Likewise, the BOLO reports at issue in this case were specific, identifying the make and model of the car, the state and license plate number with only a minor error, the registered owner of the car, and the type of activity suspected. Agents corroborated the

9

information in the BOLO by confirming that the car observed was registered to Jeremy Sambugard.  We conclude that the information provided in the BOLO was sufficiently reliable and specific to support a minimally intrusive *Terry* stop of Gonzalez' car.

Gonzalez maintains that the tip must nonetheless be discounted because the two month period between the time Special Customs Agent Steve Coker gathered the information and the time Gonzalez was stopped requires that we conclude as a matter of law that the tip had gone stale.  Gonzalez' argument is unavailing.  "Staleness is to be determined on the facts of each case." *United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir. 1984).  This Court has expressly rejected the argument that staleness can be determined by simply a "mechanical counting of the time between" the time the tip is received and the time the tip is used.  *Id.*  Rather, whether a tip has gone stale depends upon the nature of the tip and the nature of the criminal activity alleged.  The tip in this case was slightly less than two months old. *See Villalobos*, 161 F.3d at 290 (rejecting argument that two month old anonymous tip was stale, and therefore unreliable for purposes of a reasonable suspicion determination).  The BOLOS advised that Sambugard and his Honda Accord were suspected of being involved in the smuggling of contraband into the United States from Mexico.  Moreover, there was no indication that the events described in the first BOLO were either predicted to occur at a certain time or had already come to

10

pass. *See* **id.** (tips that concern an ongoing pattern of criminal activity may remain viable longer than those predicting criminal activity on a date certain). We, therefore, reject Gonzalez' argument that the tip contained in the BOLO reports had gone stale and conclude that the BOLO reports, combined with the other factors discussed in this opinion, justified the **Terry** stop of Gonzalez' vehicle.

We likewise decline to find error predicated upon the search. The district court found that Gonzalez consented to the search, and alternatively, that the search was supported by probable cause. Gonzalez has not directly challenged either of these rulings on appeal.

### CONCLUSION

The district court's denial of Gonzalez' motion to suppress is in all respects **AFFIRMED**.