**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 99-50443**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**GREGG HERRERA, JR.,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Western District of Texas**
**(P-98-CR-281-1)**
_____

July 13, 2000

Before JOLLY, SMITH, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Convicted for possession with intent to distribute marijuana, Gregg Herrera, Jr., challenges the denial of his motion to suppress, contesting the validity of the investigatory stop by a Border Patrol Agent that led to the discovery of the marijuana. We **AFFIRM**.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

The sole witness at the suppression hearing was Border Patrol Agent Myers. He had been stationed in Presidio, Texas, for two and one-half years, had participated in hundreds of cases involving apprehension of illegal aliens, and had been involved in over ten narcotics smuggling cases. Upon arriving for duty at 6:00 p.m. on 25 November 1998 (Thanksgiving), his supervisor instructed him to patrol Highway 67 north of Presidio, and to be on the lookout for four suspected illegal aliens last seen traveling on foot approximately one or two miles north of Presidio.

Presidio, with a population of about 3,500, is located on the border with Mexico. Ojinaga, Presidio's sister city across the border, is known as a "staging" area for narcotics and alien smuggling from Mexico into the United States. Highway 67 is the only road north out of Presidio.

At approximately 8:00 p.m., two hours after going on duty, and while patrolling Highway 67 five or six miles north of Presidio, the Agent observed an older model four-door sedan northbound on Highway 67. The sedan appeared to be heavily loaded, because it was riding low in the rear.

The Agent began following the sedan, and confirmed his initial observation that the rear of the vehicle was riding low. He also observed that the sedan had dark tinted windows and a muddy film on the back window, which prevented him from seeing the vehicle's interior.

The Agent ran a registration check on the sedan and determined that it was registered to an individual from Natalia, Texas. Because he did *not* know where Natalia is located in Texas, and the sedan did *not* look familiar to him, the Agent believed the vehicle was *not* from the local area.

After following and observing the sedan for about 11 miles, the Agent suspected that its driver might have picked up the four suspected illegal aliens, and that this was the reason the vehicle was riding low in the rear. Because he could *not* see into the vehicle to determine the number of occupants, he decided, about 17 miles north of Presidio, to stop — and did stop — the vehicle to conduct an immigration inspection.

Herrera, the driver and sole occupant of the sedan, answered questions about his citizenship. He then consented to a search of the vehicle, during which the Agent discovered marijuana behind the back seat.

In denying Herrera's suppression motion, the district court held: the Agent articulated specific facts that gave rise to his reasonable suspicion that Herrera might be involved in illegal activity; Herrera validly consented to the search of the vehicle; and, when the Agent smelled marijuana in the passenger compartment, he had probable cause to search the vehicle.

## II.

Herrera challenges *only* the validity of the initial stop.

A.

The Government contends we should review *only* for plain error, because Herrera did *not* specifically contend in the district court that the stop was unconstitutional. *See **United States v. Moser***, 123 F.3d 813, 823-24 (5th Cir.) (although defendant preserved one Fourth Amendment ground, his failure to raise "knock and announce" issue resulted in plain-error review), *cert. denied*, 522 U.S. 1020, 1035 (1997), 522 U.S. 1092 (1998).

The purpose of requiring that an issue be raised in the district court is to allow presentation of evidence and argument, and to provide the district court an opportunity to rule on the issue. *See **United States v. Burton***, 126 F.3d 666, 671 (5th Cir. 1997). Although Herrera did *not* use the terms "reasonable suspicion" or "investigatory stop" in his suppression motion, the Government apparently understood the motion to raise that issue, asserting in its response: "Based on a totality of the circumstances Agent Myers had reasonable suspicion to stop the vehicle".

At the suppression hearing, the parties elicited testimony from the Agent on the bases for the stop. And, the district court's ruling that the Agent articulated specific facts supporting a reasonable suspicion that Herrera was engaged in illegal activity demonstrates its understanding that the constitutionality of the stop was at issue.

4

Under these circumstances, plain error review is *not* applicable.   Instead, we review for clear error the district court's factual findings, and review *de novo* its legal conclusions, including the determination that reasonable suspicion supported the investigatory stop.  *E.g.*, **United States v. Zapata-Ibarra**, 212 F.3d 877, ___, 2000 WL 650017, at *2 (5th Cir. 2000).

B.

"Border Patrol agents on roving patrol may stop a vehicle only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that that particular vehicle is involved in illegal activity."  **United States v. Villalobos**, 161 F.3d 285, 288 (5th Cir. 1998) (citing **United States v. Cortez**, 449 U.S. 411 (1981); and **United States v. Brignoni-Ponce**, 422 U.S. 873 (1975)).

The following, well known factors are relevant in determining whether reasonable suspicion existed:

> (1) proximity to the border; (2) known characteristics of the area in which the vehicle is encountered; (3) usual traffic patterns on the particular road; (4) the agent's previous experience in detecting illegal activity; (5) information about recent illegal trafficking in aliens or narcotics in the area; (6) particular aspects or characteristics of the vehicle; (7) behavior of the driver; and (8) the number, appearance, and behavior of the passengers.

**Zapata-Ibarra**, 212 F.3d at ___, 2000 WL 650017, at *2.

> Our analysis is not limited to any one factor; rather, reasonable suspicion is a fact-

5

> intensive test in which we look at all circumstances together to weigh not the individual layers but the laminated total, and factors that ordinarily constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers.

*Id.* (brackets, internal quotation marks, and citations omitted). *See also* **United States v. Gonzalez**, 190 F.3d 668, 671 (5th Cir. 1999) ("The validity of a stop depends upon the totality of the circumstances known to the agents making the stop."); **Villalobos**, 161 F.3d at 288 ("each case must be examined from the totality of the circumstances known to the agent, and the agent's experience in evaluating such circumstances" (internal quotation marks and citation omitted)).

Herrera contends that, because the Agent did *not* claim reliance on a belief that Herrera's vehicle had recently crossed the border, the district court erred by applying a "presumption" that, because the Agent first observed the vehicle within 50 miles of the border, the Agent had reason to believe the vehicle had come from the border. He contends further that, as a result of improperly applying the border-origin presumption, the district court accorded improper weight to the other factors offered by the Agent to support the reasonableness of the stop.

Irrespective of the validity of Herrera's contentions, "the district court's denial of the motion to suppress should be upheld if there is any reasonable view of the evidence to support it".

6

*Gonzalez*, 190 F.3d at 671 (internal quotation marks and citations omitted); *see also* **United States v. Moreno-Chaparro**, 180 F.3d 629, 632 (5th Cir. 1999) ("whether the agent had reason to believe that the vehicle in question had come from the border ... alone is not controlling and other factors must be given appropriate consideration in the determination whether reasonable suspicion existed").

Considering the totality of circumstances, the Agent articulated specific facts to support a reasonable suspicion justifying the investigatory stop. The Agent, who had two and one-half years' experience in the area, first observed Herrera traveling in a vehicle on Highway 67, about five miles north of the border town of Presidio, a route well-known for illegal alien and narcotics trafficking. The Agent had received instructions to be on the lookout for four suspected illegal aliens who were last seen walking one or two miles north of Presidio. His suspicion that those individuals might be in Herrera's vehicle was based on the following: he thought it possible that the suspected aliens might have been hitchhiking along Highway 67 in the area where they were last seen, and perhaps had obtained a ride; in his experience, that type of four-door sedan was a common alien smuggling vehicle; and it appeared to be heavily loaded, because it was riding low in the rear. He was unable to determine the number of people in the

vehicle without stopping it, because of the window tinting, muddy film on the windows, and lack of light at the time.

These specific articulable facts, and the rational inferences drawn from them, reasonably warranted the Agent's suspicion that the vehicle was involved in illegal activity.  Accordingly, the Agent's decision to stop the vehicle to ascertain the number of people in it, and their citizenship, did *not* violate the Fourth Amendment.

III.

For the foregoing reasons, the denial of Herrera's motion to suppress is

***AFFIRMED.***
