United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 16, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

For the Fifth Circuit

No. 02-40096

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JUAN ARMANDO ARJONA-MARTINEZ,

Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Texas, McAllen Division
M-01-CR-587

Before KING, Chief Judge, DAVIS, Circuit Judge, and VANCE*,

District Judge.

PER CURIAM:**

Defendant-Appellant Juan Armando Arjona-Martinez appeals his conditional plea of guilty on the grounds that the district court erred in denying his motion to suppress evidence. Arjona-Martinez contends that the government obtained evidence in an unconstitutional stop by United States Border Patrol agents. The district court upheld the constitutionality of the stop. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case, the facts of which are largely undisputed, arises out of a Border Patrol stop on Highway 83, east of Roma, Texas. Roma is located less than one-quarter of a mile from Mexico, and the city contains a bridge connecting Mexico and the United States. The stretch of Highway 83 where the stop occurred is no more than eight miles from the United States-Mexico border. It is known to be an alien and narcotics trafficking route.

On July 29, 2001, Special Agent Rolando Luna of the United States Customs Service, McAllen, Texas, received a telephone call from a person named "Chuy" with information regarding a drug trafficking event. Luna and another customs agent, Gary Shanley, had never met the tipster named "Chuy." They knew, however, that Chuy had provided Luna with reliable information about drug trafficking at least three times in the past. Each of the past tips led to either the seizure of narcotics or an arrest. Chuy had always called Luna and not any other agent because of their

2

"special relationship."  According to Shanley, tipsters typically communicate with only one agent.

Chuy informed Luna that a gold Chevy Suburban with Texas license plates numbered 1PB-K96, carrying a load of drugs, would leave the area of the L&V Hotel and the R&B Restaurant in Roma, Texas and head east to McAllen, Texas on Highway 83.  Luna immediately relayed this information to Border Patrol.  Border Patrol then relayed the information to its field agents.  Border Patrol agents located the described vehicle in the vicinity of the L&V Hotel.  As predicted, the vehicle proceeded to head east on Highway 83.  Senior Border Patrol Agent Greg Reyes radioed Border Patrol agents that he had pulled up behind a gold Suburban with Texas license plates 1PB-K96.  Border Patrol Agent Eulogio Medrano, who had been traveling west on Highway 83 towards Roma, turned around and joined Reyes in pursuing the Suburban.  At the time of the stop, Medrano had worked for the Border Patrol for 15 months and in that time had made "many" narcotics apprehensions in and around Roma.

After running some record checks on the Suburban, Reyes pulled it over.  Arjona-Martinez consented to a search of his car.  While Medrano stayed in his vehicle to provide back-up, Reyes and Arjona-Martinez walked to the back of appellant's car and opened a rear door.  There were bundles containing 130 pounds of marijuana in the rear of the car that were plainly visible from the outside through the passenger windows.  Sometime

thereafter, Arjona-Martinez confessed to the crime.

The United States charged Arjona-Martinez in a one-count indictment with possessing marijuana with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Arjona-Martinez filed a motion to suppress evidence, which the district court denied after holding an evidentiary hearing. The district court concluded that the agents made the stop with reasonable suspicion. Arjona-Martinez then entered a conditional plea of guilty to the indictment. He received a sentence of 18 months with a three-year term of supervised release and a $100 special assessment. Arjona-Martinez timely filed a notice of appeal. Arjona-Martinez argues that the district court erred in denying his motion to suppress because the tip that led to his arrest was unreliable and did not give rise to reasonable suspicion under the Fourth Amendment.

## II. STANDARD OF REVIEW

We review the denial of a motion to suppress under two standards. *See United States v. Rodriguez-Rivas*, 151 F.3d 377, 379 (5th Cir. 1998). Questions of law, such as whether reasonable suspicion exists to stop a vehicle, are reviewed de novo. *See United States v. Chavez*, 281 F.3d 479, 483 (5th Cir. 2002). Factual findings are reviewed for clear error. *See id.* Further, evidence presented at a suppression hearing is viewed in the light most favorable to the prevailing party. *See id.*

4

(citing *United States v. Jordan*, 232 F.3d 447, 448 (5th Cir. 2000)).  In this case, the prevailing party is the United States.

## III.  DISCUSSION

A law enforcement officer may, consistent with the Fourth Amendment, temporarily stop a person if the officer has a reasonable, articulable suspicion that the person has committed or is about to commit a crime.  *See Chavez*, 281 F.3d at 485 (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d. 889 (1968)).  Border Patrol agents on roving patrol may stop a vehicle only if "they are aware of specific articulable facts that, together with the rationale inferences that may be drawn from those facts, reasonably warrant suspicion that the particular vehicle is involved in illegal activities."  *United States v. Gonzalez*, 190 F.3d 668, 671 (5th Cir. 1999); *see also United States v. Brignoni-Ponce*, 422 U.S. 873, 884-86, 95 S.Ct. 2574, 2582, 45 L.Ed.2d. 607 (1975); *United States v. Villalobos*, 161 F.3d 285, 288 (5th Cir. 1998).  Reasonable suspicion requires considerably less than proof of wrongdoing by a preponderance of the evidence, but more than merely an unparticularized hunch.  *Gonzalez*, 190 F.3d at 671.  The validity of the stop turns on the totality of the circumstances known to the agents making the stop.  *Id.*  Relying on *Brignoni-Ponce*, we have identified the factors that may be considered as including (1) the characteristics of the area in which the vehicle is encountered;

5

(2) the proximity to the border; (3) the usual patterns of traffic on the particular road; (4) the agents' previous experience with traffic in the area; (5) information about recent border crossings in the area; (6) the driver's behavior; and (7) the appearance of the vehicle. *Brignoni-Ponce*, 422 U.S. at 884-86, 95 S.Ct. at 2582; *Gonzalez*, 190 F.3d at 671; *Villalobos*, 161 F.3d at 288. We judge the facts against an objective standard in that we must determine whether the facts available to the officers at the moment of the stop warrant a person of reasonable caution to believe that the action taken was appropriate. *United States v. Lopez-Gonzalez*, 916 F.2d 1011, 1013 (5th Cir. 1990)(citing *United States v. Gomez*, 776 F.2d 542, 546 (5th Cir. 1985)). At bottom, whether the officers had reasonable suspicion to stop appellant's vehicle turns on the quality and the quantity of the information that they possessed. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d. 301 (1990).

Several *Brignoni-Ponce* factors support the validity of the stop of appellant's vehicle. First, the area in which the vehicle was encountered – Highway 83 east of Roma, Texas – is known to be a route frequented by alien and narcotics traffickers. Second, appellant's car was in close proximity to the United States-Mexico border inasmuch as it was fewer than eight miles from the border. *Cf. United States v. Inocencio*, 40 F.3d 716, 722 n.7 (5th Cir. 1994)(vehicles traveling more than 50

6

miles from the border are usually a "substantial distance" from the border).  Third, at least one of the Border Patrol agents on the scene had stopped narcotics traffickers in that area before.  Medrano had made "many" narcotics apprehensions in the Roma area in the 15 months preceding this stop.

Of course, Reyes and Medrano did not stop appellant's vehicle based on these factors alone – the agents also acted because of Chuy's tip.  In some circumstances, even an anonymous tip, alone, may provide the reasonable suspicion necessary to justify an investigatory stop.  *White*, 496 U.S. at 327-29, 110 S.Ct. at 2415.  Whether a particular tip provides an adequate basis for a stop depends on "the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale."  *Gonzalez*, 190 F.3d at 672.  Consideration of each of these factors supports the Border Patrol agents' decision to stop appellant's vehicle.

First, the tip that set in motion the stop of appellant's vehicle did not come from an anonymous or unreliable source.  Chuy had proven himself to be a credible and reliable tipster.  He had provided tips to Luna several times in the past, and each of these tips led to either a narcotics seizure or an arrest.

Second, Chuy's tip contained specific information.  Chuy identified the make, model, color and license plate of appellant's vehicle.  He identified its current location and, most importantly, he predicted the direction in which the vehicle would travel in the future.  Chuy's tip therefore "contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." *White*, 496 U.S. at 332, 110 S.Ct. at 2417.  Third, the nature of the tip permitted Border Patrol agents in the field to corroborate its content.  Border Patrol agents located the vehicle at the R&B Restaurant in Roma, and Reyes and Medrano ultimately stopped the vehicle when, as predicted, it headed east on Highway 83. Fourth, and finally, the information Chuy provided concerned ongoing events – it was anything but stale.

A long line of precedent indicates that the nature of Chuy's tip, as well as the totality of the circumstances surrounding the stop of appellant's vehicle, supports a finding that reasonable suspicion exists.  In *Gonzalez*, for example, Border Patrol agents in a notorious smuggling area 62 miles from the border were on the lookout for a Honda Accord with an identified Illinois license plate and an identified driver suspected of smuggling drugs from Mexico.  *Gonzalez*, 190 F.3d at 670.  The agents' information had been provided by a confidential informant about

8

two months earlier. *Id.* The agents saw a car driving on a highway in the early morning that matched this description, except that one digit in the license plate number was incorrect. The agents followed the vehicle and confirmed that it was registered to the named suspect. *Id.* at 671. The agents then stopped the car, whose driver turned out not to be the named suspect, and discovered that the driver's license had been suspended. *Id.* After receiving the driver's consent to search, the agents found drugs in the car. *Id.* The *Gonzalez* court found that the tip was not anonymous because the informant had a proven track record of providing reliable information to these agents in the past. *Id.* at 672-73 (citing *White*, 496 U.S. at 327-29, 110 S.Ct. at 2415). Further, the court found that the agents in the field corroborated the tipster's predictions before stopping the vehicle because they confirmed that the vehicle was registered to the named suspect. *Id*. Lastly, the court found that reasonable suspicion was enhanced by the time of day and the notoriety of the area, the nearly exact match between the defendant's car and the tipster's information, and the agents' experience with traffic in that area. *Id*. If anything, the facts supporting the stop of appellant's vehicle are stronger than those that supported the stop in *Gonzalez*. Most importantly, Chuy predicted the exact highway and direction in which the trafficker would be traveling. In addition, (1) Chuy identified each digit of the

trafficker's license plate correctly (as opposed to missing one digit); (2) the trafficker was traveling fewer than eight miles from the border (as opposed to 62 miles); and (3) the agents acted on a tip that was a few hours old (as opposed to two months old). *Gonzalez* therefore stands as strong precedent for concluding that the stop of appellant's vehicle was supported by reasonable suspicion. *See also Villalobos*, 161 F.3d at 292 (upholding constitutionality of Border Patrol stop based in part on anonymous informant's tip); *Lopez-Gonzalez*, 916 F.2d at 1014-16 (upholding constitutionality of Border Patrol stop based in part on informant's tip).

Appellant contends that the tipster in this case was either anonymous or unreliable. This contention is based on appellant's suggestion that it is possible that the individual that provided tips to Luna under the name "Chuy" in the past was not the individual who provided the July 29, 2001 tip under the same name. We find this argument unavailing. Luna had successfully relied on tips from "Chuy" in the past and had good reason to believe – and did believe – that the July 29, 2001 tip from Chuy would also be reliable. The reliability of the tip was confirmed when agents in the field located the vehicle that Chuy had identified, and then observed the vehicle travel in the direction that Chuy had predicted it would travel.

Appellant's reliance on *Florida v. J.L.*, 529 U.S. 266, 120

10

S.Ct. 1375, 146 L.Ed.2d 254 (2000), to establish that Chuy's tip was not reliable is similarly unpersuasive. In *J.L.*, the Supreme Court held that an anonymous tip informing the police of a subject's readily observable location and appearance, but lacking any predictive information or other "sufficient indicia of reliability," does not give rise to reasonable suspicion to justify a *Terry* stop. In *J.L.*, the police received a tip from an unknown and unnamed informant that a young black male wearing a plaid shirt was standing at a particular bus stop and was carrying a gun. *See J.L.*, 529 U.S. at 268, 120 S.Ct. at 1377. Sometime after the police received the tip, they proceeded to the bus stop and saw three black males standing there, one of whom wore a plaid shirt. *See id.* The officers approached the man in the plaid shirt, frisked him and discovered a gun. *See id.*

The Supreme Court's decision in *J.L.* is distinguishable for two reasons. First, the tip in *J.L.* came from an anonymous source with no history of providing reliable tips. The *J.L.* court noted that the veracity of such tips is more difficult to gauge than those of informants and tipsters, like Chuy, who are known to have provided reliable tips in the past. *Id.* at 270, 120 S.Ct. at 1378. Second, the tip in *J.L.* did not correctly forecast "not easily predicted movements." *Id.* at 271, 120 S.Ct. at 1379. This prompted the Supreme Court to conclude that "the anonymous call concerning J.L. provided no predictive information

11

and therefore left the police without means to test the informant's knowledge or credibility." *Id*. Here, the Border Patrol agents had ample means to test the tipster's knowledge and credibility. Chuy had provided reliable tips in the past and, in this instance, informed Luna of the vehicle's color, make, model, and plates, and its departure and destination plans. The agents were able to confirm and track the car's progress almost immediately after receiving the tip.

This tip falls squarely within the ambit of situations in which a "tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop." *White*, 496 U.S. at 332, 110 S.Ct. at 2417. But even if we are to assume that the tip alone was too unreliable to justify a stop, the tip contributes, along with the other *Brignoni-Ponce* factors, to the agents' particularized suspicion. *See Villalobos*, 161 F.3d at 291. The Border Patrol agents who stopped appellant's vehicle, unlike the officers in *J.L.*, were investigating vehicles on highways in proximity to the United States-Mexico border that are well-known conduits for aliens and narcotics. The agents had experience in conducting such investigations. Accordingly, we conclude that the agents had reasonable suspicion to make an investigatory stop of appellant's vehicle and that doing so did not violate appellant's Fourth Amendment rights. In so concluding, we reaffirm the notion that "the Fourth Amendment

12

seeks to prevent arbitrary police action, not to require absolute certainty before law enforcement officers may investigate." *Villalobos*, 161 F.3d at 292.

## IV.  CONCLUSION

The district court's denial of appellant's motion to suppress is in all respects affirmed.

AFFIRMED.

*District Judge of the Eastern District of Louisiana, sitting by designation.
**Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.