# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20212

United States Court of Appeals
Fifth Circuit

**FILED**
June 23, 2016

Lyle W. Cayce
Clerk

CARLOS GONZALEZ,

      Plaintiff - Appellant

v.

ABLE HUERTA,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before CLEMENT, GRAVES, and COSTA, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Carlos Gonzalez appeals the district court's grant of summary judgment in favor of school district police officer Abel Huerta.[1] The question presented is whether the district court erred in granting Huerta qualified immunity. Because we find no violation of clearly established law, we AFFIRM.

---

[1] The complaint lists "Able" Huerta as the defendant, but "Abel" is the correct spelling of the defendant's first name.

No. 15-20212

I.

On Tuesday, July 10, 2012, at approximately 4:30 pm in the afternoon, Carlos Gonzalez drove his gold-colored sports utility vehicle (SUV) to Bendwood Elementary School to pick up his wife, a school employee. Gonzalez was accompanied by his thirteen-year-old daughter, who rode in the back seat. Gonzalez backed into a parking space in the school lot and waited for his wife. Another employee noticed his vehicle, deemed it suspicious, and contacted the school district police, who dispatched Officer Huerta to investigate. While en route, Huerta received additional information regarding a history of vehicle burglaries at the same location, although no evidence connected any of these prior incidents to a gold SUV.

Huerta arrived at the school, matched Gonzalez's vehicle to the dispatcher's description, and approached the driver's side. Huerta then asked Gonzalez to produce his identification. Gonzalez asked for a justification for the request. Huerta repeated the request, and Gonzalez again asked for a justification. Huerta stated that he would provide a justification after Gonzalez provided his identification. Gonzalez produced a cell phone and stated that he was calling his attorney, but he hung up without speaking to anyone. Huerta then handcuffed Gonzalez, removed him from the vehicle, and placed him in the back of the patrol car, holding him there for over thirty minutes. Gonzalez's wife eventually appeared, and once Huerta confirmed Gonzalez's identity and his purpose at the school, he released him.

Gonzalez filed a § 1983 claim against Huerta alleging illegal detention, false arrest, and excessive force in violation of the Fourth Amendment. Huerta asserted qualified immunity and moved for summary judgment. The district court granted the motion, finding that Huerta's investigative detention of Gonzalez was supported by reasonable suspicion and that Huerta was entitled to qualified immunity.

No. 15-20212

II.

"We review a grant of summary judgment *de novo,* viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Furthermore, "we may affirm the district court's decision on any ground supported by the record, even if it was not the basis for the judgment." *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 878 (5th Cir. 2002).

"We also review a grant of qualified immunity de novo." *Bishop v. Arcuri*, 674 F.3d 456, 460 (5th Cir. 2012). "A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011).

III.

On appeal, Gonzalez argues only that Huerta lacked reasonable suspicion to detain him, violating his constitutional right to be free from unreasonable searches and seizures.[2] The district court determined that Huerta's investigative detention was supported by reasonable suspicion, "a question of law, to which we apply de novo review." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 737 (5th Cir. 2000). "Reasonable suspicion must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion." *United*

---

[2] Thus, we do not consider his false arrest or excessive force claims.

3

No. 15-20212

*States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994). It "requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Gonzalez*, 190 F.3d 668, 671 (5th Cir. 1999). "The application of the reasonable suspicion standard requires the consideration of the totality of the circumstances." *United States v. Neufeld-Neufeld*, 338 F.3d 374, 378 (5th Cir. 2003).

Viewing the evidence in the light most favorable to Gonzalez, we have serious doubts as to whether Huerta had a reasonable basis to detain him.[3] Huerta's first piece of information was the bare report of a "suspicious" vehicle in the school parking lot. Huerta's second piece of information was "a recent history of burglaries of motor vehicles at the same location." But Huerta did not receive any information connecting the "suspicious" vehicle to any of the alleged burglaries. Rather, Huerta encountered the basic scenario of a reportedly suspicious person in an area where criminal activity had occurred in the past—a scenario that does not support the conclusion that a particular individual is engaged in criminal conduct. *See Brown v. Texas*, 443 U.S. 47, 52 (1979) (police stop of a suspect for "look[ing] suspicious" in a "neighborhood frequented by drug users" was not justified by reasonable suspicion). Nor is there any indication that it would be unusual for a car to be legally parked in a school parking lot on a weekday afternoon as school employees are leaving for the day. *Compare Flores v. City of Palacios*, 381 F.3d 391, 402-03 (5th Cir. 2004) (holding that car parked on the wrong side of a two-way street in violation of Texas law supported reasonable suspicion).

---

[3] While an investigative detention must be based on reasonable suspicion, an arrest—whether explicit, or de facto in the form of an excessively long *Terry* detention—must be based on probable cause. *See United States v. Zavala*, 541 F.3d 562, 579 (5th Cir. 2008). Because Gonzalez has not raised the issue of arrest on appeal, we only consider whether Huerta violated Gonzalez's rights in the initial stop and identification request.

No. 15-20212

Furthermore, "reasonable suspicion must be [present] . . . *at the time of the decision to stop a person." United States v. Silva*, 957 F.2d 157, 160 (5th Cir. 1992) (emphasis added). Here, any suspicions held by Huerta should have been alleviated before he decided to detain Gonzalez. First, Gonzalez did not attempt to drive away or flee the scene as the officer approached. *Compare Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (holding that suspect's unprovoked flight upon noticing police supported reasonable suspicion). Second, Huerta saw a thirteen-year-old girl calmly sitting in the back of the vehicle; and third, Gonzalez was doing little more than sitting in his car in a public lot.

Finally, Huerta points to Gonzalez's phone call as a suspicious activity. But Gonzalez explicitly stated that he wanted to contact his attorney, who was apparently unavailable to receive the call. In sum, no real inference of criminal activity can be drawn from the totality of these facts and circumstances.

But even if we assume that Huerta violated Gonzalez's constitutional rights by detaining him without reasonable suspicion, we cannot say that this detention was objectively unreasonable in light of clearly established law.[4] Gonzalez argues that the law is clearly established that a police officer's demand for identification constitutes a seizure under the Fourth Amendment and must be based on reasonable suspicion. But this general claim—that a seizure under the Fourth Amendment must be based on reasonable suspicion—is precisely the type of "general proposition" that the Supreme Court has rejected. *See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011). Instead, the Court has repeatedly emphasized the need to look at the specific facts of a case when determining qualified immunity. *See id.* ("We have

---

[4] We may proceed directly to the second prong of the qualified immunity analysis without explicitly ruling on the first. *See Pearson v. Callahan*, 555 U.S. 223, 227 (2009).

repeatedly told courts . . . not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (internal citations omitted). With the more specific inquiry the Court requires, the question becomes whether there is either "directly controlling authority . . . establishing the illegality of such conduct" or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that *his actions* were lawful," *McClendon v. City of Columbia*, 305 F.3d 314, 328–29 (5th Cir. 2002) (emphasis added) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).[5]

Here, it appears that Huerta's decision to detain Gonzalez was based, at least in part, on his belief that Gonzalez was required to identify himself pursuant to §37.105 of the Texas Education Code.[6] And while prior Supreme Court cases have held that police may not detain an individual solely for refusing to provide identification, *see Brown*, 443 U.S. at 52, and *Hiibel v. Sixth Judicial District Court of Nevada, Humboldt County*, 542 U.S. 177, 188 (2004), neither of those cases dealt with incidents occurring on school property. This

---

[5] The dissent argues that the law governing investigative detentions is "well-settled" and thus the *al-Kidd* specificity concerns are not implicated. But the Ninth Circuit recently held that qualified immunity protected an officer who had violated *Terry* "despite the many cases that have given shape to the contours of the reasonable suspicion requirement of *Terry*." *Thomas v. Dillard*, 818 F.3d 864, 887 (2016). It recognized that the "Supreme Court's demanding standard" for a plaintiff to establish a violation of clearly established law required case law establishing the unlawfulness of the stop and frisk in the particular context of the case, which in *Thomas* involved reports of a domestic dispute. *Id.* at 887–88 (explaining that the Supreme Court has "repeatedly told courts not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstance that he or she faced." (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014))).

[6] Section 37.105 of the Texas Education Code states that "[i]dentification may be required of any person on [school] property."

No. 15-20212

is no small distinction, as the Supreme Court has routinely reconsidered the scope of individual constitutional rights in a school setting. *See, e.g.*, *Morse v. Frederick*, 551 U.S. 393 (2007); *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646 (1995); *New Jersey v. T.L.O.*, 469 U.S. 325 (1985). Thus, we find that *Brown*—which Gonzalez relies on—and *Hiibel* do not meet the "sufficiently high level of specificity" necessary "to put a reasonable official on notice" that detaining an individual for a failure to provide identification on school property "is definitively unlawful." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015), *cert. denied*, No. 15-7891, 2016 WL 361734 (2016).[7] Accordingly, we do not find that Huerta's actions were "objectively unreasonable in light of a clearly established rule of law." *Id.* Huerta is therefore entitled to qualified immunity. AFFIRMED.

---

[7] Indeed, the officers stated to Gonzalez that "our job is a little bit different. . . . we've got kids here, . . . so we have to approach a little bit different."

No. 15-20212

GRAVES, Circuit Judge, dissenting:

I disagree with the majority's conclusion that there was no violation of clearly established law. Because I would reverse the grant of summary judgment on the illegal detention claim and remand to the district court for further proceedings, I respectfully dissent.

Gonzalez argues that Huerta violated his constitutional right to be free from unreasonable searches and seizures when he handcuffed and detained him for failure to provide identification.

"Temporary, warrantless detentions of individuals constitute seizures for Fourth Amendment purposes and must be justified by reasonable suspicion that illegal activity has or is taking place." *United States v. Rodriguez*, 564 F.3d 735, 740-41 (5th Cir. 2009); *See Terry v. Ohio*, 392 U.S. 1, 30-31. As the majority states, "[r]easonable suspicion must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion." *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994). It "requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Gonzalez*, 190 F.3d 668, 671 (5th Cir. 1999). "The application of the reasonable suspicion standard requires the consideration of the totality of the circumstances." *United States v. Neufeld-Neufeld*, 338 F.3d 374, 378 (5th Cir. 2003).

The majority essentially acknowledges that Huerta did not have a reasonable basis to detain Gonzalez, but then determines that the law is not clearly established. I disagree.

As an initial matter, I would explicitly conclude that, under the totality of the circumstances, Huerta lacked reasonable suspicion to detain Gonzalez and, thus, violated his constitutional rights. Huerta received only a bare report that originated from an unknown third party of a "suspicious" vehicle in the

8

school parking lot and information of a recent history of automobile burglaries at the same location. Huerta did not receive any information connecting either Gonzalez or the "suspicious" vehicle to that information. As the majority states, the scenario encountered by Huerta was akin to that in *Brown v. Texas*, 443 U.S. 47, 52 (1979), and did not justify reasonable suspicion for a stop. As the majority further concludes, based on the totality of the facts and circumstances in this case, any suspicions held by Huerta should have been alleviated when he approached the vehicle.

However, after a fairly thorough analysis outlining how Huerta violated Gonzalez's constitutional rights without reasonable suspicion, the majority then determines that the very law it relies upon is not clearly established.[1] I cannot agree. Further, I disagree with any attempt to make the qualified immunity analysis so fact-specific that it would never be clearly established. Thus, I would conclude that Huerta's detention of Gonzalez was objectively unreasonable in light of clearly established law. In so concluding, I disagree with the majority's characterization of Gonzalez's claim as a "general proposition" rejected by the Supreme Court.

Although the law is clearly established that a seizure under the Fourth Amendment must be based on reasonable suspicion, Gonzalez does not merely make a general claim. Instead, he asserts that a police officer's demand for identification constitutes such a seizure and must be based on reasonable

---

[1] The majority is correct that, under *Pearson v. Callahan*, 555 U.S. 223, 227 (2009), it "may proceed to the second prong of the qualified immunity analysis." However, the *Pearson* holding does not include the majority's additional language "without explicitly ruling on the first." Further, notwithstanding that the majority essentially ruled on the first prong, *Pearson* merely said that, while deciding the two-step procedure in sequence is usually "appropriate" and "beneficial," it is not "inflexible" or "mandatory." *Id.* at 227, 236.

suspicion based on the clearly established law of *Brown*.[2]  Further, even Huerta acknowledges that the applicable law here is well-settled.

The majority relies on a narrow proposition taken out of context from *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).  The quoted material cited by the majority actually begins with: "The Court of Appeals also found clearly established law lurking in the broad 'history and purposes of the Fourth Amendment.'"  *Id.*  Here, Gonzalez does not claim that the clearly established law stems only from the "broad history and purposes of the Fourth Amendment."  Instead Gonzalez cites applicable case law, as does the majority.  Further, in *al-Kidd*, the Court clearly also said: "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.* at 741.

The issue in *al-Kidd* was whether "pretext could render an objectively reasonable arrest pursuant to a material-witness warrant unconstitutional" in the detention of terrorism suspects.  The Court concluded that "[b]ecause al-Kidd concedes that individualized suspicion supported the issuance of the material-witness arrest warrant; and does not assert that his arrest would have been unconstitutional absent the alleged pretextual use of the warrant; we find no Fourth Amendment violation."  *Id.* at 740.  With regard to whether the law was clearly established, the Court concluded that "not a single judicial opinion had held that pretext could render an objectively reasonable arrest pursuant to a material witness unconstitutional" and stated that other cited

---

[2] Gonzalez also cites *United States v. Hill*, 752 F.3d 1029 (5th Cir. 2014), where this court concluded that a motion to suppress should have been granted where a seizure of Hill, who had been sitting in a car in an apartment complex parking lot, was unreasonable and violated *Terry*.  Specifically, this court said that the relevant circumstances, which included an area known for drug activity and Hill's girlfriend's hasty exit from the car when the police arrived, did not amount to articulable facts from which a reasonable officer could suspect Hill of being engaged in criminal activity.  *Id.* at 1031.

No. 15-20212

cases had been "rejected as irrelevant in our discussion of whether there was any constitutional violation at all." *Id*. at 741-42. Here, we are not deciding an issue dealing with probable cause for an arrest, the applicable cases cannot be rejected as irrelevant, and Gonzalez has made no concessions of suspicion or reasonableness.

The Supreme Court has definitively held that a police officer may not detain an individual he deems suspicious solely for refusing to provide identification, even under a state statute and in a neighborhood frequented by drug users, without reasonable suspicion. *See Brown*, 443 U.S. at 51-52; Tex. Penal Code Ann., Tit. 8, § 38.02. *See also Hiibel v. Sixth Jud. Dist. Ct. of Nev., Humboldt Cty.*, 542 U.S. 177, 188 (2004); NRS 171.123(3).

Despite the fact that the Supreme Court specifically said in *al-Kidd* that "[w]e do not require a case directly on point," the majority concludes that school property is somehow different and there must be a case directly on point. *See al-Kidd*, 563 U.S. at 741. The majority cites, as does Huerta, section 37.105 of the Texas Education Code. Section 37.105 says:

> The board of trustees of a school district or its authorized representative may refuse to allow a person without legitimate business to enter on property under the board's control and may eject any undesirable person from the property on the person's refusal to leave peaceably on request. Identification may be required of any person on the property.

Texas Educ. Code § 37.105.[3] However, section 37.105 says nothing about any authority to detain an individual who does not immediately provide

---

[3] The majority cites *Morse v. Frederick*, 551 U.S. 393 (2007), and *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646 (1995), and *New Jersey v. T.L.O.*, 469 U.S. 325 (1985), as authority for the proposition that the "Supreme Court has routinely reconsidered the scope of individual constitutional rights in a school setting." However, those cases all deal with the rights of students and have no application here. Additionally, the majority's quote from Huerta regarding "we've got kids" here is inapplicable. This occurred after school and there

11

identification upon demand, but rather says only that a person may be ejected. Moreover, it is not clear that Huerta is either a member of the board of trustees of the school district or an authorized representative.

Nonetheless, assuming that section 37.105 allowed Huerta to require that Gonzalez provide identification, it would have been unreasonable for Huerta to believe that he could then detain Gonzalez under that same section for failing to immediately do so. Huerta apparently agrees because he argues that he did not detain Gonzalez solely for failing to provide identification, but did so because he had a reasonable basis to suspect a connection between Gonzalez and recent car burglaries under what he refers to as the "settled law" of *Terry* and *Michelletti*. Further, the district court decided the case on reasonable suspicion of criminal activity. But, as the majority's analysis reveals, the record does not support the existence of reasonable suspicion.

Both Huerta and the district court attempted to distinguish *Brown* on the basis that Huerta had more specific information than the officer in *Brown*, not because *Brown* did not occur in a school parking lot. However, the record does not establish that Huerta had more information than the officer in *Brown* and the case law does not support the majority's conclusion that the law is not clearly established.

For these reasons, I would reverse the grant of summary judgment on the illegal detention claim. Accordingly, I respectfully dissent.

---

is no evidence that any kids were present other than Gonzalez's daughter, who was calmly sitting in the backseat of her father's vehicle while waiting for her mother to exit work.