GRAVES, Circuit Judge,
dissenting:
I disagree with the majority’s conclusion that there was no violation of clearly established law. Because I would reverse the grant of summary judgment on the illegal detention claim and remand to the district court for further proceedings, I respectfully dissent.
Gonzalez argues -that Huerta violated his constitutional right to be free from unreasonable searches and seizures when he handcuffed and detained him for failure to provide identification.
“Temporary, warrantless detentions of individuals constitute seizures for Fourth Amendment purposes and must be justified by reasonable suspicion that illegal activity has or is taking place.” United States v. Rodriguez, 564 F.3d 735, 740-41 (5th Cir.2009); See Terry v. Ohio, 392 U.S. 1, 30-31, 88 S.Ct. 1868, 20 L.Ed.2d 889. As the majority states, “[rjeasonable suspicion must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion.” United States v. Michelletti, 13 F.3d 838, 840 (5th Cir.1994). It “requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence.” United States v. Gonzalez, 190 F.3d 668, 671 (5th Cir.1999). “The application of the reasonable suspicion standard requires the consideration of the totality of the circumstances.” United States v. Neufeld-Neu-feld, 338 F.3d 374, 378 (5th Cir.2003).
The majority essentially acknowledges that Huerta did not have a reasonable basis to detain Gonzalez, but then determines that the law is not clearly established. I disagree.
As an initial matter, I would explicitly conclude that, under the totality of the circumstances, Huerta lacked reasonable suspicion to detain Gonzalez and, thus, violated his constitutional rights. Huerta received only a bare report that originated from an unknown third party of a “suspicious” vehicle in the school parking lot and information of a recent history of automobile burglaries at the same location. Huerta did not receive any information connecting either Gonzalez or the “suspicious” vehicle to that information. As the majority states, the scenario encountered by Huerta was akin to that in Brown v. Texas, 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), and did not justify reasonable suspicion for a stop. As the majority further concludes, based on the totality of the facts and circumstances in this case, any suspicions held by Huerta should have been alleviated when he approached the vehicle.
However, after a fairly thorough analysis outlining how Huerta violated Gonzalez’s constitutional rights without reasonable suspicion, the- majority then determines that the very law it relies upon is not clearly established.[1] I cannot agree. Further, I disagree with any attempt to make the qualified immunity analysis so fact-specific that it would never be clearly established. Thus, I would conclude that Huerta’s detention of Gonzalez was objectively unreason *860 able in light of clearly established law. In so concluding, I disagree with the majority’s characterization of Gonzalez’s claim as a “general proposition” rejected by the Supreme Court.
Although the law is clearly established that a seizure under the Fourth Amendment must be based on reasonable suspicion, Gonzalez does not merely make a general claim. Instead, he asserts that a police officer’s demand for identification constitutes such a seizure and must be based on reasonable suspicion based on the clearly established law of Brown.[2] Further, even Huerta acknowledges that the applicable law here is well-settled.
The majority relies on a narrow proposition taken out of context from Ashcroft v. al-Kidd, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). The quoted material cited by the majority actually begins with: “The Court of Appeals also found clearly established law lurking in the broad ‘history and purposes of the Fourth Amendment.’ ” Id. Here, Gonzalez does not claim that the clearly established law stems only from the “broad history and purposes of the Fourth Amendment.” Instead Gonzalez cites applicable case law, as does the majority. Further, in al-Kidd, the Court clearly also said: “We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.” Id. at 741, 131 S.Ct. 2074.
The issue in al-Kidd was whether “pretext could render an objectively reasonable arrest pursuant to a material-witness warrant unconstitutional” in the detention of terrorism suspects. The Court concluded that “[b]ecause al-Kidd concedes that individualized suspicion supported the issuance of the material-witness arrest warrant; and does not assert that his arrest would have been unconstitutional absent the alleged pretextual use of the warrant; we find no Fourth Amendment violation.” Id. at 740, 131 S.Ct. 2074. With regard to whether the law was clearly established, the Court concluded that “not a single judicial opinion had held that pretext could render an objectively reasonable arrest pursuant to a material witness unconstitutional” and stated that other cited cases had been “rejected as irrelevant in our discussion of whether there was any constitutional violation at all.” Id. at 741-42, 131 S.Ct. 2074. Here, we are not deciding an issue dealing with probable cause for an arrest, the applicable cases cannot be rejected as irrelevant, and Gonzalez has made no concessions of suspicion or reasonableness.
The Supreme Court has definitively held that a police officer may not detain an individual he deems suspicious solely for refusing to provide identification, even under a state statute and in a neighborhood frequented by drug users, without reasonable suspicion. See Brown, 443 U.S. at 51-52, 99 S.Ct. 2637; Tex. Penal Code Ann., Tit. 8, § 38.02. See also Hiibel v. Sixth Jud. Dist. Ct. of Nev., Humboldt Cty., 542 U.S. 177, 188, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004); NRS 171.123(3).
Despite the fact that the Supreme Court specifically said in al-Kidd that “[w]e do not require a case directly on point,” the majority concludes that school property is somehow different and there must be a case directly on point. See al-Kidd, 563 *861 U.S. at 741, 131 S.Ct. 2074. The majority cites, as does Huerta, section 37.105 of the Texas Education Code. Section 37.105 says:
The board of trustees of a school district or its authorized representative may refuse to allow a person without legitimate business to enter on property under the board’s control and may eject any undesirable person from the property on the person’s refusal to leave peaceably on request. Identification may be required of any person on the property.
Texas Educ. Code § 37.105.[3] However, section 37.105 says nothing about any authority to detain an individual who does not immediately provide identification upon demand, but rather says only that a person may be ejected. Moreover, it is not clear that Huerta is either a member of the board of trustees of the school district or an authorized representative.
Nonetheless, assuming that section 37.105 allowed Huerta to require that Gonzalez provide identification, it would have been unreasonable for Huerta to believe that he could then detain Gonzalez under that same section for failing to immediately do so. Huerta apparently agrees because he argues that he did not detain Gonzalez solely for failing to provide identification, but did so because he had a reasonable basis to suspect a connection between Gonzalez and recent car burglaries under what he refers to as the “settled law” of Terry and Michelletti. Further, the district court decided the case on reasonable suspicion of criminal activity. But, as the majority’s analysis reveals, the record does not support the existence of reasonable suspicion.
Both Huerta and the district court attempted to distinguish Brown on the basis that Huerta had more specific information than the officer in Brown, not because Brown did not occur in a school parking lot. However, the record does not establish that Huerta had more-information than the officer in Brown and the case law does not support the majority’s conclusion that the law is not clearly established.
For these reasons, I would reverse the grant of summary judgment on the illegal detention claim. Accordingly, I respectfully dissent.

. The majority is correct that, under Pearson v. Callahan, 555 U.S. 223, 227, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), it "may proceed to the second prong of the qualified immunity analysis.” However, the Pearson holding does not include the majority’s additional language “without explicitly ruling on the first.” Further, notwithstanding that the majority essentially ruled on the first prong, Pearson merely said that, while deciding the two-step procedure in sequence is usually "appropriate” and "beneficial,” it is not "inflexible” or “mandatory.” Id. at 227, 236, 129 S.Ct. 808.

. Gonzalez also cites United States v. Hill, 752 F.3d 1029 (5th Cir.2014), where this court concluded that a motion to suppress should have been granted where a seizure of Hill, who had been sitting in a car in an apartment complex parking lot, was unreasonable and violated Terry. Specifically, this court said that the relevant circumstances, which included an area known for drug activity and Hill's girlfriend’s hasty exit from the car when the police arrived, did not amount to articulable facts from which a reasonable officer could suspect Hill of being engaged in criminal activity. Id. at 1031.

. The majority cites Morse v. Frederick, 551 U.S. 393, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007), and Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995), and New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), as authority for the proposition that the “Supreme Court has routinely reconsidered the scope of individual constitutional rights in a school setting.” However, those cases all deal with the rights of students and have no application here. Additionally, the majority’s quote from Huerta regarding “we've got kids” here is inapplicable. This occurred after school and there is no evidence that any kids were present other than Gonzalez’s daughter, who was calmly sitting in the backseat of her father’s vehicle while waiting for her mother to exit work.