*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

––––––––––––––

### UNITED STATES
Appellee

**v.**

### Calyx E. HARRELL, First Lieutenant
United States Air Force, Appellant

#### No. 16-0007
Crim. App. No. 38538

Argued April 5, 2016—Decided June 28, 2016

Military Judge: Christopher Santoro

For Appellant: *Douglas L. Cody,* Esq. (argued); *Major Christopher D. James* (on brief).

For Appellee: *Major Mary Ellen Payne* (argued); *Colonel Katherine E. Oler* and *Gerald R. Bruce*, Esq. (on brief).

Amicus Curiae: *Forrest Boone* (law student) (argued); *Jeremy Dalrymple* (law student), *Maurice Fitzgerald* (law student), *Julie Munns* (law student), *Gary Rowe* (law student), and *Cameron W. Fogle,* Esq. (supervising attorney) (on brief) – University of Alabama School of Law.

Chief Judge ERDMANN delivered the opinion of the court, in which Judges STUCKY, RYAN, and OHLSON joined. Senior Judge COX filed a separate concurring opinion.

––––––––––––––

Chief Judge ERDMANN delivered the opinion of the court.[1]

Pursuant to her unconditional guilty plea, First Lieutenant Calyx E. Harrell was convicted at a general court-martial of a single specification of wrongful use of marijuana, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10

––––––––––––––

[1] We heard oral argument in this case at the University of Alabama School of Law, Tuscaloosa, Alabama, as part of the court's "Project Outreach." *See United States v. Mahoney,* 58 M.J. 346, 347 n.1 (C.A.A.F. 2003). This practice was developed as part of a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

U.S.C. § 912a (2012). Pursuant to her conditional guilty pleas,[2] Harrell was also convicted of one specification each of wrongful possession of marijuana and wrongful possession of drug paraphernalia, in violation of Articles 112a and 133, UCMJ, 10 U.S.C. § 933 (2012). A panel of officer members sentenced Harrell to a dismissal, 198 days of confinement (time served), and forfeiture of all pay and allowances. The convening authority approved the sentence as adjudged and the United States Air Force Court of Criminal Appeals (AFCCA) affirmed the findings and sentence. *United States v. Harrell*, No. ACM 38538, 2015 CCA LEXIS 279, at *37, 2015 WL 4626527, at *13 (A.F. Ct. Crim. App. July 1, 2015) (unpublished).

A traffic stop is "subject to the constitutional imperative that it will not be 'unreasonable' under the circumstances," *Whren v. United States*, 517 U.S. 806, 810 (1996), and a dog sniff conducted during a lawful traffic stop "that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment," *Illinois v. Caballes*, 543 U.S. 405, 410 (2005). We granted review to determine whether Harrell's traffic stop was unreasonably extended under the circumstances and whether the actions of the drug dog in this case violated the Fourth Amendment.[3] We hold that any extension of the lawful traffic stop was justified by the officer's reasonable suspicion of criminal activity and that the military judge did not clearly err by finding the drug dog sniff complied with the Fourth Amendment. We therefore affirm the AFCCA.

### BACKGROUND

In the early morning hours of August 4, 2012, civilian police officer Robert Soltis stopped Harrell for traveling eighty miles per hour in a sixty mph zone near Solon, Ohio. The entire stop was recorded by the police car's dashboard camera. After the stop, Soltis approached the car at 12:26 a.m. and asked Harrell "where [she was] going so fast," where she was coming from, and how fast she thought she was traveling. Harrell provided the officer with her Pennsylvania driver's license and explained

---

[2] Harrell's conditional pleas reserved the right to review the military judge's ruling on her motion to suppress evidence discovered during a search of her vehicle.

[3] We specified the following issue for review:

> Whether evidence obtained from a police search of Appellant's vehicle on or about August 4, [2012], was obtained in violation of the Fourth Amendment and should have been suppressed.

she was driving from St. Louis, Missouri, to Nelson Ledges, a nearby campground in Ohio known to Soltis as a location commonly used for illegal drug activity.

According to Soltis, during his initial interaction with Harrell he noticed she appeared unkempt and unclean, her eyes were not completely open, her hands shook, she took long pauses before answering his questions, and she mumbled. Based on these observations, Soltis believed Harrell was possibly under the influence of alcohol or drugs and/or was engaged in drug trafficking.

At 12:28 a.m., Soltis told Harrell to "sit tight" in her car and returned to his vehicle. After requesting the assistance of a canine drug-detection unit, Soltis contacted his dispatch to validate Harrell's out-of-state identification and to check for outstanding warrants. While Soltis was waiting for the results of his dispatch inquiry, he observed Harrell exit her vehicle, lean against the rear driver's side, and light a cigarette. Soltis exited his patrol car and had Harrell move to the passenger side of her vehicle and away from traffic for her safety. Soltis then informed Harrell that a canine unit was on the way. Harrell asked why, to which Soltis responded:

> OFFICER 1: Well we're stopping you for speeding—
>
> ….
>
> OFFICER 1: [S]o I'm still trying to figure out whether I'm giving you a ticket for going 20 over the speed limit or not. And you fit the profile and everything else matches for drug carrier—
>
> ….
>
> OFFICER 1: You're on this street and where you're going, where you're coming from and all that stuff are all indicators. [I'm] not going to say you're a [bad person]. I didn't say you're a drug dealer or drug user ….
>
> ….
>
> OFFICER 1: I'm just asking certain questions ….

At 12:32 a.m., Patrolman Matthew Troyer arrived with his drug dog, Stryker, and performed a drug-detection sniff of Harrell's vehicle. As Stryker reached the front driver's side window, he "went high" by rising up on his hind legs and placing his forepaws up to the plane of the open window. Stryker immediately "alerted" on the driver's side of the vehicle by sitting down and staring at the door. Based on this positive alert for the presence of narcotics, the officers searched the vehicle and

found 1.8 grams marijuana and two glass smoking pipes with marijuana residue. Harrell was placed under arrest and transported to the Solon County Jail, where an additional 9.6 grams of marijuana were found concealed on her person.

At trial, Harrell moved to suppress the evidence obtained at the traffic stop arguing that Soltis unreasonably prolonged the stop to perform the dog sniff, impermissibly broadened the scope of the stop, and conducted an unauthorized search of the interior of Harrell's rental car, all in violation of the Fourth Amendment. The military judge denied the motion after reviewing the dashboard footage and concluding Stryker "did not extend his nose into the passenger compartment" through the open window or otherwise break the plane of the window. The military judge further concluded the stop was not impermissibly extended in order to conduct a dog sniff. The AFCCA affirmed, holding that the traffic stop was "not extended in order to conduct the dog-sniff, … the authority for the seizure had not ended at the time it occurred," and that the military judge's findings of fact were supported by the recording and, thus, not clearly erroneous. *Harrell*, 2015 CCA LEXIS 279, at *13, *17-18, 2015 WL 4626527, at *5-6.

## DISCUSSION

To resolve the specified issue we must separately address two sub-issues: (1) whether the traffic stop was unreasonably extended; and (2) whether Stryker's actions violated the Fourth Amendment. This court reviews a military judge's ruling on a motion to suppress for abuse of discretion, considering the evidence in the light most favorable to the prevailing party. *United States v. Reister*, 44 M.J. 409, 413 (C.A.A.F. 1996). While a military judge's findings of fact are reviewed for clear error, conclusions of law are reviewed de novo. *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004).

### 1. Was the Traffic Stop Unreasonably Extended?

Harrell initially argues that Soltis unlawfully prolonged the duration of the traffic stop in order to conduct a dog sniff. Specifically, Harrell asserts that the entire period between the officer's return to the patrol car to contact dispatch and the end of the dog sniff—approximately seven or eight minutes in total—was an unreasonable addition to the stop. Harrell emphasizes that Soltis called for a canine unit prior to contacting dispatch and only minutes after stopping Harrell for speeding. Harrell contends that facts amounting to a reasonable suspi-

cion of criminal activity could not have possibly been estab-lished within this timeframe.

In response, the government urges this court to conclude the dog sniff was conducted within the time necessary to com-plete the tasks related to the traffic stop itself; therefore, the stop was not measurably extended. The government further argues that prolonging the stop would have been warranted in any event based on the officer's reasonable and articulable sus-picion that Harrell was engaged in drug-related activity.

As noted above, "[a]n automobile stop is … subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren*, 517 U.S. at 810. Generally, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has oc-curred." *Id.* However, an officer's authority to keep an individ-ual at a traffic stop ends "when tasks tied to the traffic infrac-tion are—or reasonably should have been—completed." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015). There is no bright-line rule governing whether the length of a traffic stop is "reasonable," rather, "it [is] appropriate [for the court] to examine whether the police diligently pursued a means of in-vestigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the de-fendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

However, during a traffic stop an officer may continue de-tention where he has a reasonable suspicion of criminal activity sufficient to justify that detention. *Rodriguez*, 135 S. Ct. at 1609. A "reasonable suspicion" is less than probable cause, *Al-abama v. White*, 496 U.S. 325, 330 (1990), and has been defined as a "particularized and objective basis for suspecting the par-ticular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). This inquiry must be based on the totality of the circumstances. *United States v. Robinson*, 58 M.J. 429, 433 (C.A.A.F. 2003). "The analysis proceeds with various objective observations, [including] consideration of the modes or patterns of operation of certain kinds of lawbreakers. From th[is] data, a trained officer draws inferences and makes deductions … that might well elude an untrained person." *Cor-tez*, 449 U.S. at 418. Recognizing that "[t]his process of infer-ences and deductions does not deal with hard certainties, but with probabilities," *Robinson*, 58 M.J. at 433 (citation omitted) (internal quotation marks omitted), "[d]ue weight" is afforded "to the factual inferences drawn by the law enforcement of-ficer," *United States v. Arvizu*, 534 U.S. 266, 277 (2002).

According to the testimony of Officer Soltis and the factual findings of the military judge, when the officer initially spoke with Harrell he observed her unkempt and unclean appearance

and noticed that her eyes were not completely open. Harrell's hands shook as the officer questioned her and she took long pauses before responding. When Harrell did speak, Soltis described her responses as "mumbled." Based on these observations, the officer believed Harrell was under the influence of alcohol or drugs. Officer Soltis also believed Harrell might have been engaged in drug trafficking because she had driven a rental car a long distance in order to reach an area locally known for drug activity, but an area that would likely be unknown to most people coming from St. Louis. Officer Soltis further testified that, in his fifteen years of experience, every person that he had stopped who was on his or her way to Nelson Ledges was also in possession of drugs. We conclude that Officer Soltis's considerations were legitimate. *See, e.g.*, *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("officers are not required to ignore the relevant characteristics of a location" and an individual's "nervous, elusive behavior is a pertinent factor" in determining reasonable suspicion); *United States v. Thomas*, 913 F.2d 1111, 1116 (4th Cir. 1990) (it was relevant that the "illegal transport of drugs often involves the use of rental cars traveling from source cities"); *United States v. Maguire*, 359 F.3d 71, 77 (1st Cir. 2004) (it is relevant that the suspect's "appearance was disheveled" when determining whether the officer had a reasonable suspicion).

Taken together and based on the officer's training and experience, these observations establish a particularized and objective basis to suspect Harrell was involved in drug use or trafficking. Having reached the conclusion that a reasonable suspicion of drug use or activity existed, we need not further analyze whether, in the absence of this suspicion, the traffic stop was unreasonably extended.

2. Did the Dog Sniff Violate the Fourth Amendment?

Harrell also argues that the police lacked probable cause to search her vehicle until Stryker alerted at the driver's side door. According to Harrell, because Stryker only alerted after his nose improperly entered the interior of the vehicle, any evidence seized based on his alert was the product of a Fourth Amendment violation. In making this contention, Harrell relies on *Florida v. Jardines*, 133 S. Ct. 1409 (2013), to support her position that a drug dog's physical intrusion into an individual's vehicle constitutes a clear-cut Fourth Amendment violation.

The government responds that the military judge did not abuse his discretion when he concluded the dog sniff and the search that followed did not violate the Fourth Amendment.

Furthermore, even if the military judge clearly erred by concluding Stryker's nose did not enter the vehicle, the government urges this court to hold that there was no constitutional violation because Stryker acted instinctually and without urging from his handler. In the alternative, the government asserts that the officers had probable cause to search the vehicle prior to any improper intrusion.

"[C]onducting a dog sniff [does] not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog sniff itself infringed [on the appellant's] constitutionally protected interest in privacy." *Caballes*, 543 U.S. at 408. Harrell's Fourth Amendment arguments are predicated on her assertion that the dog's nose entered the interior of the vehicle without probable cause. However, after reviewing the patrol car's dashboard footage, the military judge made the following findings of fact before ruling on Harrell's motion to suppress the evidence seized from her rental vehicle:

> Officer Troyer and Stryker began with a sniff of the vehicle's exterior, starting with the passenger's side headlight and working counter-clockwise around the vehicle. When Stryker got to the driver's door, Officer Troyer noted that Styker's breathing changed. Officer Troyer continued walking toward the rear of the vehicle but Stryker "went high," meaning that he reached his paws up the side of the car to get his nose closer to the open window. Stryker momentarily placed his paws on the door but did not extend his nose into the passenger compartment.

Having reviewed the entire record, and viewing the evidence in the light most favorable to the government, we find no basis for concluding the military judge's factual findings are clearly erroneous.

#### DECISION

The police did not impermissibly extend the traffic stop nor did the military judge clearly err when he concluded the drug dog's nose did not penetrate the interior of the open car window. Therefore, the dog sniff and subsequent search of Harrell's vehicle did not violate the Fourth Amendment. The specified issue is answered in the negative and the decision of the United States Air Force Court of Criminal Appeals is affirmed.

Senior Judge COX (concurring):

I concur in the well-reasoned opinion of the Chief Judge and I agree with the standard of review of the military judge's findings of facts in this case and applying that standard, conclude, as did the Chief Judge, there was no "physical intrusion" into a constitutionally protected zone.

However, whether the nose of a trained drug detection dog crossed or did not cross the invisible plane of an open car window (probably less than five mm in thickness) is a slender reed to cling to when determining whether a citizen's Fourth Amendment rights to be free from a warrantless search have been violated. I write separately to expand upon the holding that the military judge did not abuse his discretion in denying the motion to suppress the results of the traffic stop.

"[C]onducting a dog sniff [does] not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog sniff itself infringed [the appellant's] constitutionally protected interested in privacy." *Illinois v. Caballes*, 543 U.S. 405, 408 (2005). While "interior sniffs may become constitutionally infirm in the event that the interior sniff is accomplished or facilitated by the officer-handler," a dog's instinctual behavior does not violate the Fourth Amendment where the canine acts "of its own initiative and is neither encouraged nor placed into the vehicle by law enforcement." *United States v. Sharp*, 689 F.3d 616, 619-20 (6th Cir. 2012) (citations omitted); *see also United States v. Pierce*, 622 F.3d 209, 214 (3d Cir. 2010) (applying the "considerable body of jurisprudence" to conclude that the dog's sniffs around the interior of the vehicle did not violate the Fourth Amendment where the handler neither caused nor directed the dog to do so); *United States v. Winningham,* 140 F.3d 1328, 1331 & n.2 (10th Cir. 1998) (finding a constitutional violation where the police officer opened the vehicle and thus "facilitated" the dog's intrusion into the interior).

In this case, when Stryker, the drug dog, "went high" and placed his forepaws below the driver's side window, he did so without prompting, urging, or facilitation by his

handler or the other officers. In addition, Harrell had left the window open when she exited the vehicle to smoke a cigarette. Based on these established facts, I conclude that when Stryker leapt up on the car, whether his nose penetrated the interior of the car or not, his actions were instinctual and therefore did not violate the Fourth Amendment.

Accordingly, I join Chief Judge Erdmann's opinion.