Judge GIERKE
delivered the judgment of the Court.
A general court-martial convicted the Appellant, pursuant to his pleas, of failure to obey a lawful order, possessing cocaine, using cocaine, and assault, in violation of Articles 92, 112a, and 128, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 892, 912a, and 928, respectively. Appellant’s pleas of guilty to possession and use of cocaine were conditional pleas, entered in accordance with Rule for Courts-Martial 910(a)(2). The adjudged sentence, imposed by a panel of officer and enlisted members, provides for a bad-conduct discharge, confinement for six months, and reduction to pay grade E-4. The convening authority approved the sentence but waived automatic forfeitures. The Court of Criminal Appeals affirmed the findings and sentence. United States v. Robinson, 56 M.J. 541 (A.F.Ct.Crim.App.2001).
*430 This Court granted review of the following issue:[1]
WHETHER THE MILITARY JUDGE ERRED IN FAILING TO SUPPRESS ALL EVIDENCE OBTAINED AS THE RESULT OF AN UNLAWFUL STOP AND SUBSEQUENT SEARCH OF APPELLANT’S AUTOMOBILE.
For the reasons set out below, we affirm the decision of the Court of Criminal Appeals.

Background

At the time of the offenses, the Appellant was assigned to the 45th Communications Squadron at Patrick Air Force Base (AFB), Florida. He was a Technical Sergeant (E-6) with approximately 19 years of active duty.
On the evening of February 27, 1999, Officer Mark Jennewein, a member of the Melbourne, Florida Police Department, was working the night shift on routine patrol. Before joining the Melbourne Police Department, Officer Jennewein had been an Air Force security policeman for over five years. His last military assignment was at Patrick AFB. Melbourne is about six miles from Patrick AFB.
Officer Jennewein was patrolling a high-crime area, known for its drug and prostitution activity, in a marked police cruiser. He was engaged in “a prostitution and drug interdiction.” At about 1:00 a.m., he noticed a maroon four-door Oldsmobile parked “right next to [a well-known drug dealer’s] house in his dirt driveway or dirt lot.” His computer check of the license plate number revealed that the registered owner lived at 95-B Virginia. Officer Jennewein saw a sticker on the vehicle that identified the registered owner as a noncommissioned officer assigned to Patrick AFB. Officer Jennewein observed the car for another 10 or 15 minutes and then was called away for other duties.
Officer Jennewein continued his patrol and later parked his car behind a vacant liquor store in another high drug and prostitution area. Shortly thereafter, he saw the same maroon Oldsmobile travelling on the roadway. As soon as Officer Jennewein’s marked police cruiser pulled out behind the Appellant’s vehicle, the Appellant quickly made a right turn, without signaling, into an unpaved alley next to an apartment complex. The sudden turn did not cause Officer Jennewein to brake suddenly or swerve. Officer Jennewein testified that failure to signal a turn is an indicator of impaired driving. He decided to stop Appellant’s vehicle when it made the sudden turn without signaling. He activated his red and blue lights and made a traffic stop at approximately 1:30 a.m.
Officer Jennewein approached the Oldsmobile and asked the Appellant to produce his driver’s license, vehicle registration, and proof of insurance. Appellant fumbled with his wallet and was able to present his driver’s license, but he was not able to find his registration and proof of insurance. Officer Jennewein told him to keep looking for the other documents.
There was a passenger in the Appellant’s car, who was “rough” looking, with tattered clothing, and somewhat emaciated, “like a street person.” The passenger had no identification, but said he lived in the neighborhood and that his name was Floyd Simmons. Mr. Simmons said he knew the Appellant because they had worked together for the last six months as concrete block masons. Officer Jennewein checked for outstanding warrants against Mr. Simmons, determined that there were none, and allowed him to leave. Officer Jennewein asked the Appellant how he knew Mr. Simmons, and Appellant indicated they had just met.
After about 10 minutes, the Appellant found his registration and proof of insurance. Meanwhile, Officer Duffy arrived in her patrol car as a backup, having heard Officer Jennewein report the traffic stop on the police radio. Officer Jennewein noticed that the address on the Appellant’s registration did not match the address on his driver’s license.
*431 Officer Jennewein requested a computer check for outstanding warrants against the Appellant. He was told to wait because of another request ahead of him. While waiting for h response, he began writing a ticket for failing to update the address on the driver’s license. He gave Appellant a “verbal” warning for failing to signal his turn.
Officer Jennewein asked Appellant if he had any drugs or weapons in his car, and Appellant said he did not. Officer Jennewein then asked him to consent to a search of his vehicle. When Appellant declined, Officer Jennewein requested that a canine unit be sent to the scene.
Officer Jennewein asked Appellant about the military sticker on his vehicle, and Appellant responded that he was in the military. Officer Duffy asked Appellant for his military identification, and Appellant complied. Officer Jennewein then noticed that the date of birth on Appellant’s military identification card was different from the date of birth on his driver’s license. Appellant said that the Department of Motor Vehicles had made a mistake and would not allow him to correct it.
While conversing with Appellant, Officer Jennewein noticed an odor of alcohol coming from Appellant’s person. Appellant’s speech seemed somewhat “mumbled” and his eyes were watery and bloodshot.
Officer Jennewein was still writing the citation for the out-of-date address on the driver’s license and still waiting for the computer check on Appellant when the canine unit arrived at approximately 1:48 a.m. Officer Jennewein asked Officer Gary Markowski, the canine officer, to walk the canine around the car. When Officer Markowski asked Appellant to move back to avoid interfering with the canine, he noticed that Appellant “seemed to be a bit slow in his actions,” and “seemed to be sluggish with his speech and his movements[.]”
Officer Jennewein advised Appellant that he suspected him of driving under the influence of alcohol, and he asked him to submit to a field sobriety exercise. Appellant refused. Meanwhile, the canine alerted on Appellant’s vehicle. Officer Jennewein advised Appellant that he was being detained upon probable cause that he had a narcotic substance in his car. Appellant was handcuffed and placed in the patrol car.
Officers Jennewein and Markowski searched Appellant’s vehicle and found rock cocaine and drug paraphernalia. Officer Jennewein then informed Appellant he was under arrest for possession of cocaine as well as driving under the influence of alcohol. Officer Jennewein testified that he would have arrested Appellant and searched his car even if the canine had not alerted.
At trial, Appellant moved to suppress “any and all evidence, including but not limited to cocaine, urine and blood tests and results, observations of the police officers, and military [identification] card obtained as the result of the unlawful seizure of the accused and resulting search of his vehicle[.]” The defense argued that there was no probable cause and “no justifiable or legal reasons for the stop” of Appellant’s vehicle, because the turn without signaling did not violate Florida law. The defense further argued that the stop was “unreasonably extended” to conduct a canine search of the vehicle.
Officer Jennewein did not specifically mention Florida law in his testimony. He referred to the failure to signal as an indicator of impaired driving and as a “traffic infraction.” The only references to Florida law were in the defense’s written motion to suppress and in oral argument on the motion.
The military judge made extensive findings of fact that comported with the uncontested testimony of Officers Jennewein and Markowski. Among these findings of fact, the military judge found, “Officer Jennewein initiated a traffic stop based upon the failure to properly signal.” The military judge ruled that Officer Jennewein had probable cause to stop Appellant for a traffic violation when Appellant braked suddenly and turned without signaling; that, after making the traffic stop and observing Appellant, Officer Jennewein had a reasonable suspicion that Appellant was impaired; that the alert by the canine provided probable cause to search the vehicle; and that the cocaine and parapher *432 nalia would have been inevitably discovered even if the dog had not alerted, because it would have been discovered during a search incident to arrest.
The military judge also ruled that the duration of the stop (approximately 21 minutes) was reasonable, based on the need to run two separate computer checks on Appellant and his passenger, the delay in receiving the second computer check because of heavy police activity, the inability of Appellant to promptly produce his registration and proof of insurance, and the prompt arrival of the canine unit while Officer Jennewein was still waiting for the computer check and still writing the citation for the out-of-date address.
The military judge concluded that the Fourth Amendment was not violated; accordingly, she denied the motion to suppress.
The Court of Criminal Appeals did not disturb the military judge’s findings of fact or make additional findings of fact. However, the court held that Officer Jennewein did not have probable cause to stop Appellant for a traffic violation, because Florida law requires a turn signal only when another vehicle is “affected” by the turn,[2] and Appellant’s sudden turn without signaling did not affect Officer Jennewein by causing him to brake or swerve. However, the court concluded that the facts as found by the military judge were sufficient to establish reasonable suspicion sufficient to justify stopping Appellant’s vehicle. Finally, the lower court concluded, as did the military judge, that the duration of the stop was reasonable.

Discussion

Appellant now asserts that Officer Jennewein stopped his vehicle under the erroneous belief that he had committed a traffic violation. He also asserts that the facts were insufficient to justify an investigative stop, because there was not enough evidence to establish reasonable suspicion that he was involved in ongoing criminal activity. Appellant has not challenged the duration of the stop.
The Government has not challenged the lower court’s holding regarding Florida law. Instead, the Government argues that the totality of the circumstances were sufficient to establish reasonable suspicion that Appellant was engaged in illegal activity. Since the Government does not assert that there was probable cause for a traffic stop of the Appellant’s vehicle, we limit our discussion to the question whether Officer Jennewein had reasonable suspicion that Appellant was engaged in criminal activity.
We review issues involving reasonable suspicion de novo. Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). An investigative stop of an individual is permissible under the Fourth Amendment “where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot.” Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Similarly, an investigative stop of a motor vehicle is constitutionally permissible where there is reasonable suspicion that the occupants are engaged in wrongdoing. United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Based on the totality of the circumstances, “[T]he detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.” Id.
The concept of particularized suspicion has two elements. The first element is that “the assessment must be based upon all the circumstances.” As the Supreme Court explained:
*433 The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions — inferences and deductions that might well elude an untrained person.
Id. This process of inferences and deductions “does not deal with hard certainties, but with probabilities.” Id.
The second element of the particularized suspicion required is “that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing.” Id. The factual basis for reasonable suspicion must be more than a mere “hunch.” Terry, 392 U.S. at 27, 88 S.Ct. 1868. However, it need not rise to the level of probable cause, and it falls considerably short of a preponderance of the evidence. United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).
In considering the totality of the circumstances, the detaining officer may consider a series of acts which are innocent in themselves, but which, taken together, warrant further investigation. United States v. Arvizu, 534 U.S. 266, 274-75, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). While mere presence in a high-crime area, standing alone, is insufficient for reasonable suspicion, it is a “relevant contextual consideration.” Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)(citing Adams v. Williams, 407 U.S. 143, 144, 147-48, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)). Unprovoked flight “is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.” Id. Evasive behavior is a relevant consideration. United States v. Brignoni-Ponce, 422 U.S. 873, 885, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); United States v. Larios-Montes, 500 F.2d 941, 944 (9th Cir.1974)(passengers in vehicle appeared to be trying to hide). The fact that a vehicle appears out of place is relevant. United States v. Gonzalez, 190 F.3d 668, 672 (5th Cir.1999)(Border Patrol agents who were familiar with local traffic on isolated road did not recognize vehicle and noted it had out-of-state license plates). Finally, the time of day is relevant. Id., United States v. Lender, 985 F.2d 151, 154 (4th Cir.1993) (presence in known drug area at 1:00 a.m.); United States v. Knox, 950 F.2d 516, 519 (8th Cir.1991)(presence in high-crime area late at night).
In this ease, Appellant was twice seen by Officer Jennewein in high crime areas at an unusual time. The first time Appellant’s vehicle was parked in “right next to” a well-known drug dealer’s house. Appellant’s vehicle, owned by an Air Force noncommissioned officer who lived on Patrick AFB, was out of place. Appellant’s presence was sufficiently unusual that Officer Jennewein kept his vehicle under surveillance until he was called away by his dispatcher. A short time later, Officer Jennewein saw Appellant’s vehicle a second time, cruising in a nearby high-crime neighborhood. As soon as Officer Jennewein pulled out behind Appellant’s vehicle, Appellant made a sudden turn into an unpaved alley. Even if the turn was not illegal under Florida law, it was (1) evasive, (2) an indicator of impaired driving, and (3) unusual because it was a sudden turn onto an unpaved alley that was not a customary roadway. Considering the totality of the circumstances, we hold that Officer Jennewein had reasonable suspicion sufficient to justify an investigative stop of the Appellant’s vehicle.
When we review a military judge’s ruling to admit or suppress evidence, we review the military judge’s factfinding under the elearlyerroneous standard and conclusions of law de novo. United States v. Sullivan, 42 M.J. 360, 363 (C.A.A.F.1995). There was no dispute regarding the predicate facts in this case. The only litigated issues at trial were Officer Jennewein’s legal authority to stop the Appellant’s car and the duration of the stop.
In this case, the military judge erroneously concluded that Officer Jennewein had probable cause to stop the Appellant for a traffic violation. However, the military judge’s error was harmless, because the military judge reached the correct result, albeit for the wrong reason. We agree with the Court of Criminal Appeals that the facts found by the *434 military judge were sufficient to establish reasonable suspicion for an investigative stop.
After making the investigative stop, Officer Jennewein quickly discovered evidence that Appellant had failed to update the address on his license and that he was driving while impaired. While Officer Jennewein was writing the citation for the driver’s license violation, the canine alerted, giving him probable cause to search the vehicle. See United States v. Alexander, 34 M.J. 121, 125 (C.M.A.1992)(canine’s alert provided probable cause for search). Even before the dog alerted, Officer Jennewein had already decided that he had probable cause to arrest Appellant for driving while impaired. We hold that the military judge did not err by denying the motion to suppress the evidence obtained as a result of the investigative stop.[3]

Decision

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

. We heard oral argument in this case at the Washington & Lee University School of Law, Lexington, Virginia, on November 13, 2002, as part of "Project Outreach.” See United States v. Mahoney, 58 M.J. 346 n. 1 (C.A.A.F.2003).

. The statute provides:
No person may turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety, and then only after giving an appropriate signal in the manner hereinafter provided, in the event any other vehicle may be affected by the movement.
Fla. Stat. ch. 316.155 (2002)(emphasis added).
The Florida Supreme Court has held that § 316.155 is not violated by a failure to signal a turn if the turn did not affect any other vehicle. State v. Riley, 638 So.2d 507, 508 (Fla.1994). The Florida Supreme Court’s interpretation of state law is entitled to full faith and credit, “absent some prevailing federal interest properly proven.” United States v. Allen, 27 M.J. 234, 239 (C.M.A.1988).

. In light of our holding that Officer Jennewein had reasonable suspicion to stop Appellant's vehicle, and that the canine’s alert provided probable cause to search the vehicle, we need not decide whether the military judge correctly concluded that the evidence would have been inevitably discovered.