OPINION OF THE COURT
PETROW, Judge:
We examined the record of trial, the assignment of error, and the government’s reply thereto. Contrary to his pleas, the appellant was found guilty of conspiracy to possess cocaine and wrongful use of cocaine, in violation of Articles 81 and 112a, UCMJ, 10 U.S.C. §§ 881, 912a. A military judge sitting as a general court-martial sentenced the appellant to a bad-conduct discharge, confinement for 7 months, and reduction to E-l. The convening authority approved the findings and sentence as adjudged. The appellant argues that the military judge improperly denied his request to suppress evidence supporting the charges, on the basis that such evidence was the fruit of an illegal traffic stop by the local police. We disagree and affirm.

Background

On 7 September 2003, Sergeant (Sgt) K.R. Edwards of the Goldsboro, North Carolina, Police Department, was on patrol in a marked police vehicle. Sgt Edwards is a veteran police officer with approximately 29 years of law enforcement experience, including extensive drug interdiction training and experience. Between 0600 and 0630 hours, Sgt Edwards observed the appellant sitting in his idling vehicle, parked on an otherwise empty street, directly in front of an apartment house known by Sgt Edwards to be used for the illegal sale of narcotics. The appellant parked his vehicle on the same side of the street as the “drug house,” but was pointed in the opposite direction of normal traffic flow. The appellant’s vehicle was the only one on the street at that time. The residents on that street parked their vehicles in their driveways.
The drug house had been under observation by the police for several months prior to the events in issue. An occupant of that house, DT, was a known drug dealer. Sgt Edwards had, in the past, approached people who were parked near the house who subsequently admitted to him they were there to purchase crack cocaine.
As he was driving by the appellant’s idling vehicle, Sgt Edwards observed a female proceed from a doorway of the drug house known by police to be the “drug transaction door,” and walk toward the appellant’s vehicle. Sgt Edwards was “90% sure” that he recognized the woman, BAW, who he encountered about a month earlier after she suffered a drug overdose, apparently brought about by taking a combination of pills and alcohol.*
Sgt Edwards drove past the appellant’s vehicle and continued to observe the appellant and BAW in his rearview mirror while he waited at a traffic light. Sgt Edwards saw BAW look in his direction and pause at the appellant’s passenger door, without opening it. When the traffic light changed, Sgt Edwards proceeded through the intersection and, as he did so, he watched BAW enter the appellant’s vehicle. At that point, he suspected BAW had purchased drugs at the house. Sgt Edwards broadcast a description of the appellant’s car and the direction it was heading over the police radio.
■Shortly thereafter, the appellant’s car was stopped by Officer Wayne Cannucci, also with the Goldsboro Police Department. Sgt Edwards arrived at the scene within minutes of the stop. While Officer Cannucci interviewed the appellant, Sgt Edwards spoke to BAW, who was in the passenger seat. BAW first denied there were any drugs in the vehicle. After Sgt Edwards informed BAW that they were prepared to have a drug detection dog walk around the vehicle, BAW produced several rocks of crack cocaine. The appellant and BAW were both placed under arrest for possession of cocaine after each gave the officers a different story about the circumstances surrounding their presence near the drug house that morning. After BAW was handcuffed, she informed Sgt Edwards that the appellant told her he used *660 illegal drugs the night before, and that he drove her to the drug house to purchase cocaine.
Later that morning, Special Agent (SA) William Byrd, from the Air Force Office of Special Investigations, picked up the appellant after notification of his arrest by the Goldsboro police. After returning to base with SA Byrd, the appellant voluntarily provided a urinalysis specimen after accomplishing a written consent form. The appellant’s urine tested positive for the presence of ben-zolecgonine, a cocaine metabolite.

Discussion

Rulings regarding the admission or exclusion of evidence, including rulings on motions to suppress, are reviewed for an abuse of discretion. United States v. Rodriguez, 60 M.J. 239, 246 (C.A.A.F.2004) (citing United States v. Monroe, 52 M.J. 326, 330 (C.A.A.F.2000)). See also United States v. Henley, 48 M.J. 864, 868 (A.F.Ct.Crim.App.1998), aff'd, 53 M.J. 488 (C.A.A.F.2000). When there is a motion to suppress, the military judge’s findings of fact are reviewed on a clearly erroneous standard, and conclusions of law are reviewed de novo. United States v. Ayala, 43 M.J. 296, 298 (C.A.A.F.1995). Whether the facts surrounding an investigative stop constitute “reasonable suspicion” is reviewed de novo. United States v. Robinson, 58 M.J. 429, 432 (C.A.A.F.2003) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).
“Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a ‘seizure’ of ‘persons’ within the meaning of [the Fourth Amendment].” Whren v. United States, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). “An investigative stop of an individual is permissible under the Fourth Amendment ‘where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot.’ ” Robinson, 58 M.J. at 432 (quoting Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). “ ‘[Reasonable suspicion’ is a less demanding standard than probable cause and requires a showing considerably less than [a] preponderance of the evidence.” Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (citing United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). The Fourth Amendment requires only that a law enforcement officer have a “minimal level of objective justification for making the stop.” Id. In reviewing reasonable suspicion determinations, we look at the “totality of the circumstances” to see whether the detaining officer had a “particularized and objective basis” for suspecting legal wrongdoing prior to the stop. United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).
In Robinson, the Court discerned that there are two elements which constitute the concept of “particularized suspicion”: (1) the assessment must be based on all the circumstances, and (2) there must exist “a suspicion that the particular individual being stopped is engaged in wrongdoing.” Robinson, 58 M.J. at 433 (quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). In regard to the first element, the Court stated:
The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.
Id. at 433 (quoting Cortez, 449 U.S. at 418, 101 S.Ct. 690). In regard to the second element, the Court noted that although the factual basis required for the stop must be “more than a mere hunch,” it “need not rise to the level of probable cause, and it falls considerably short of a preponderance of the evidence.” Id. (citations omitted).
The Robinson Court also observed that, “[i]n considering the totality of the circumstances, the detaining officer may consider a series of acts which are innocent in themselves, but which, taken together, warrant further investigation.” Id. (citing Arvizu, 534 U.S. at 274-75, 122 S.Ct. 744). Further *661 more, “[w]hile mere presence in a high-crime area, standing alone, is insufficient for reasonable suspicion, it is a ‘relevant contextual consideration.’ ” Id. (quoting Wardlow, 528 U.S. at 124, 120 S.Ct. 673). The fact that a vehicle seems out of place is a relevant consideration. Id. (citing United States v. Gonzalez, 190 F.3d 668, 672 (5th Cir.1999)). The time of day is relevant as well. Id. (citing United States v. Gonzalez, 190 F.3d at 672).
The case cited by the appellant, United States v. Sprinkle, 106 F.3d 613 (4th Cir.1997), serves as an adequate baseline for our analysis of “particularized suspicion” in the instant case. In Sprinkle, police observed a known drug felon, VP, who had recently been released from prison, sitting in a parked vehicle in a neighborhood known for considerable narcotics trafficking. They then observed Sprinkle, who was not known to the police, come out of a house and enter VP’s vehicle. VP and Sprinkle huddled together at the center console of the vehicle with their hands close together. The nearest police officer believed Sprinkle was about to pass something to VP and alerted his partner. VP, upon observing the police officer, placed his hand to the left side of his face as if to conceal himself from the officer. Nothing was seen in the two suspects’ hands. As the police officers headed for their vehicles, VP drove away in a normal, unsuspicious manner. The vehicle was blocked by an unrelated traffic stop. As the officers approached VP’s vehicle, Sprinkle stepped out of the car and fled once the officer initiated a patdown. In the course of his flight, Sprinkle fired a handgun at the pursuing officer. He was eventually disarmed and arrested. At trial, the federal district judge granted the defense motion to suppress evidence of the gun as the fruit of an unlawful stop. On appeal, the lower court’s decision was reversed on other grounds.
In both Sprinkle and the instant case, one of the two parties involved had a drug-related history. In Sprinkle, VP was a known narcotics felon. In the present case, BAW was known to Sgt Edwards because of her prior abuse of drugs and alcohol. In both cases, some suspicious behavior was observed before the stop—VP and Sprinkle’s hand motions in the front seat of the vehicle and BAW’s hesitation to enter the appellant’s vehicle until she observed Sgt Edwards’ vehicle pulling away after the traffic light turned green. In neither case did the vehicle of VP or the appellant depart the scene in a suspicious manner.
Had there been no further basis for Sgt Edwards’ “particularized suspicion” than the above, the appellant’s argument would be stronger; however, the two eases differ significantly in some respects. First, VP’s car was parked on a busy street in the late afternoon. Had the officer not recognized VP, the car’s presence would hardly have aroused any suspicion. The appellant’s vehicle, on the other hand, was observed parked near a known drug house at dawn, facing in the wrong direction, with its engine running, on an otherwise deserted street. These circumstances were only exacerbated by the fact that the residents on that street all parked their vehicles in their driveways as was usual in that neighborhood.
Sgt Edwards observed BAW standing in close proximity to a door of a known drug house. She then proceeded to the appellant’s vehicle, and paused as she watched Sgt Edwards’ marked police car drive away. BAW then got into the appellant’s vehicle. In contrast, the house from which Sprinkle emerged just prior to entering VP’s vehicle had no such notoriety, nor was Sprinkle known to the officer as having any connection to drug abuse.
All of these circumstances, when viewed in their totality, were sufficient to lead Sgt Edwards—a 29-year law enforcement veteran— to draw inferences and make “deductions that might well elude an untrained person.” Robinson, 58 M.J. at 433 (citing Cortez, 449 U.S. at 418, 101 S.Ct. 690). At trial, Sgt Edwards clearly articulated that he drew upon his 29 years of law enforcement experience generally, his extensive experience in drug interdiction specifically, and his familiarity with the criminal activities associated with the house in question, when he concluded that one or more of the individuals in the appellant’s vehicle was engaged in criminal wrongdoing. See id. Accordingly, we find that Sgt Edwards had a basis for a “particu *662 larized suspicion” of criminal activity sufficient to warrant the investigative stop of the appellant’s vehicle. We hold that the military judge did not abuse his discretion in failing to suppress the evidence in question.

Conclusion

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); United States v. Reed, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the approved findings and sentence are
AFFIRMED.

 It is unclear from the record how the drugs were obtained.