*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee

**v.**

### Matthew D. NORWOOD,
**Machinist's Mate Nuclear First Class Petty Officer**
United States Navy, Appellant

**No. 20-0006**
Crim. App. No. 201800038

Argued October 27, 2020—Decided February 24, 2021

Military Judge: Shane E. Johnson

For Appellant: *Lieutenant Commander Chris Riedel,* JAGC, USN (argued); *Captain Nicholas S. Mote,* USMC.

For Appellee: *Major Kerry E. Friedewald,* USMC (argued); *Lieutenant Commander Timothy C. Ceder,* JAGC, USN, *Lieutenant Colonel Nicholas L. Gannon,* USMC, and *Brian K. Keller,* Esq. (on brief).

Chief Judge STUCKY delivered the opinion of the Court, in which Judge MAGGS and Senior Judge EFFRON joined. Judge OHLSON filed a separate opinion concurring in the result. Judge SPARKS filed a separate opinion concurring in part and dissenting in part and in the result.

————————

Chief Judge STUCKY delivered the opinion of the Court.

Appellant claims that the military judge erred during his court-martial by admitting the majority of the videotaped forensic interview of the alleged victim as a prior consistent statement under Military Rule of Evidence (M.R.E.) 801(d)(1)(B)(ii) and mishandling supposed improper argument by the trial counsel. The United States Navy-Marine Corps Court of Criminal Appeals (CCA) found that some errors did occur, but that they nevertheless did not materially prejudice Appellant's substantial rights. We hold that while the interview was properly admitted as a prior consistent statement, the improper argument prejudiced Appellant as to sentencing, and reverse.

## I. Procedural History

Appellant was investigated and prosecuted for sexually abusing his niece, EN. The panel of officers that sat as a general court-martial convicted Appellant, contrary to his plea, of one specification of sexual abuse of a child, in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b (2012). The panel then sentenced Appellant to a dishonorable discharge, confinement for eighteen months, and reduction to the grade of E-1. The convening authority approved the adjudged sentence. On appeal, the CCA affirmed the findings with exceptions and affirmed the sentence. *United States v. Norwood*, 79 M.J. 644, 661–62, 666–67 (N-M. Ct. Crim. App. 2019).[1]

## II. Prior Consistent Statement

### A. Facts

The first issue is whether the military judge erred by admitting the substantive portions of EN's videotaped forensic interview as a prior consistent statement under M.R.E. 801(d)(1)(B)(ii) such that Appellant was prejudiced.

As the primary source of the Government's evidence during the court-martial, EN testified about the events as follows.

In late December 2015, EN and her brother, RJ, stayed with Appellant for a brief visit. At the time, EN was fifteen years old and RJ was twelve. One night, Appellant and EN watched a movie on the couch in the living room, while RJ played a video game on Appellant's computer in the bedroom. During the movie, Appellant asked EN if she wanted a massage. When EN replied yes, Appellant said, " 'I don't want you

---

[1] Although not relevant to the granted issues, we note that the lower court excepted certain words from the specification. 79 M.J. at 661. Appellant was charged and convicted of sexually abusing EN by touching her "breast, buttocks, groin, and inner thigh." The CCA, however, found that Appellant's conviction was legally and factually sufficient only as to Appellant's "touching EN's breast, buttocks, and thigh," and therefore excepted the words "groin" and "inner" from the specification. *Id*. Nevertheless, the court decided that those exceptions did not "change . . . the penalty landscape" and therefore affirmed the sentence as adjudged. *Id*. at 662.

to get mad at me, but I need you to take your bra off.' " EN did so and Appellant proceeded with the massage. Initially, he simply massaged her back, but then he began to touch her around her stomach, breast, and pubic areas. Even though EN became tense and pushed his hand away, he continued touching her and moved her so that she was sitting on him such that she could feel his erect penis. Then, he asked her "how far [she] had been with someone and if there was a boy back [home]." When she said that she had only kissed one boy in fourth grade, he responded that " 'that didn't count' " and pushed her off of him. EN then left the room, eventually returning to watch another movie with Appellant and RJ. The next day, Appellant apologized to EN, saying " 'I'm sorry for being an asshole the other night.' "

EN believed that Appellant had "touched [her] inappropriately" and "for sexual purposes." Consequently, she tried to avoid Appellant as much as possible for the rest of the trip and felt that the remainder of the visit was "really awkward." When she returned home, she had trouble sleeping, spending time with her friends, and being physically close to anyone, especially boys in her class. Still, she did not tell anyone what had happened, because she thought that she was at fault and feared that Appellant would hurt her if she told. Additionally, she wanted her parents to know and help her, but did not tell them because she worried about disappointing them. However, a few weeks later, she talked about the incident with her best friend. The friend told her father, who informed EN's stepfather. Appellant subsequently was charged with sexually abusing EN.

After EN's direct testimony at the court-martial, the defense sought to undermine her credibility through cross-examination. In particular, the defense asked EN about how she had not spoken with the defense before the court-martial, her mother had not wanted her to talk to the defense, and she had met with the prosecution a number of times before the court-martial. Following up about the meetings with the prosecution, the defense asked if the prosecution had told her to " '[j]ust tell the truth' " and whether she had "had to practice to tell the truth" before. On redirect, the Government sought to rehabilitate EN's credibility by introducing her videotaped forensic interview

as a prior consistent statement. The defense objected, arguing that the interview was inadmissible hearsay. The military judge then called an Article 39(a), UCMJ, 10 U.S.C. § 839(a) session to develop the record regarding the issue. After hearing arguments by both the Government and defense, the military judge agreed with the Government's assertion that the defense had attacked EN's credibility by suggesting that the prosecution had coached her testimony and that EN's statements from the interview were consistent with those that she made during her court-martial testimony. As a result, the military judge found that the interview, with the exception of the introductory rapport building discussion, was admissible as a prior consistent statement under M.R.E. 801(d)(1)(B)(ii). The Government then played that interview for the members.

On appeal, the CCA analyzed whether the interview was admissible as a prior consistent statement. *Norwood*, 79 M.J. at 654–57. The lower court agreed with the military judge that the Government was permitted to introduce EN's interview as a prior consistent statement because the defense had implied that the trial counsel had coached EN's testimony and the statements from the interview were consistent with the statements from the testimony. *Id.* at 656. However, the court then found that the alleged coaching was a charge of recent fabrication or recent improper influence, rather than that of an attack on another ground, meaning the military judge should have admitted the interview under M.R.E. 801(d)(1)(B)(i) instead of M.R.E. 801(d)(1)(B)(ii). *Id.* But because the interview was still admissible, just pursuant to a different provision, it found that the military judge's error did not prejudice Appellant. *Id.*

## B. Law

We review a military judge's decision to admit evidence for an abuse of discretion. *United States v. Finch*, 79 M.J. 389, 394 (C.A.A.F. 2020) (quoting *United States v. Frost*, 79 M.J. 104, 109 (C.A.A.F. 2019)). The military judge's decision constitutes an abuse of discretion if "his findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or [his decision] is outside the range of choices reasonably arising from the applicable facts and the

law." *Id.* (internal quotation marks omitted) (citation omitted). If the military judge did improperly admit evidence, we evaluate whether the error prejudiced the appellant, weighing "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019) (internal quotation marks omitted) (quoting *United States v. Norman*, 74 M.J. 144, 150 (C.A.A.F. 2015)).

Hearsay statements—out of court statements offered into evidence to prove the truth of the matter asserted—usually are inadmissible in courts-martial. M.R.E. 801(c); M.R.E. 802. However, a prior consistent statement made out of court may not constitute hearsay, and thus can be admitted as substantive evidence, if certain threshold requirements are first met: (1) the declarant of the statement testifies at the court-martial, (2) the declarant is subject to cross-examination, and (3) the statement is consistent with the declarant's testimony. *Finch*, 79 M.J. at 394–95 (citing M.R.E. 801(d)(1)(B)). The first prong of M.R.E. 801(d)(1)(B) requires the prior consistent statement to be offered " 'to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying.' " *Id.* at 394 (quoting M.R.E. 801(d)(1)(B)(i)). Under the second prong of the rule, the statement must be offered " 'to rehabilitate the declarant's credibility as a witness when attacked on another ground.' " *Id.* (quoting M.R.E. 801(d)(1)(B)(ii)). The party that attempts to admit the prior consistent statement into evidence bears the burden of proving that it is admissible. *Id.*

## C. Analysis

The Government argues that it met the requirements laid out in M.R.E. 801(d)(1)(B) and *Finch* such that the substantive part of the interview was admissible as a prior consistent statement. *See also Finch*, 79 M.J. at 394–95 (citing M.R.E. 801(d)(1)(B)). Appellant concedes that EN testified and was subject to cross-examination at the court-martial, the interview was offered to rehabilitate EN's credibility because the defense attacked it, and the interview was consistent with EN's statement at least in part. Nevertheless, Appellant continues to object to the admission of the interview on two pri-

mary bases. We agree with the Government and find Appellant's arguments opposing the admission of the interview unpersuasive.

First, Appellant contends that both the military judge and the CCA erred regarding the defense's attack of EN's credibility: according to Appellant, the accusation was not that the prosecution had coached her to provide incriminating testimony against Appellant, but instead that she had made up the allegations from the beginning. However, the military judge found as a fact that the ground on which the defense attacked EN's credibility was that her testimony as a witness was coached by the Government. The military judge's finding of fact is not clearly erroneous. Defense counsel asked EN "[h]ow many times" she spoke with the prosecutors and whether they told her to " '[j]ust tell the truth.' " They also questioned EN about whether she "ever before had to practice to tell the truth or is this like the first time?" Finally, they inquired as to whether EN only remembered an event when she was "practicing [her] testimony." Based on these statements, the military judge could infer that defense counsel was relying on the "suggestive force of questions . . . to carry the message" that EN's testimony was coached by the Government. 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8:39, at 341 (4th ed. 2013). Consequently, even if Appellant is correct that the defense also tried to undermine EN's credibility by contending that she had fabricated the allegations herself, the military judge's decision—to admit the interview as a response to the argument that she was coached—was within the range of choices reasonably arising from the facts and law. *See United States v. Campo Flores*, 945 F.3d 687, 705–06 (2d Cir. 2019).

The framing of the attack also leads to the issue of the prong of M.R.E. 801(d)(1)(B) under which the interview could be admitted. The CCA determined that the military judge erred when he concluded the interview was admissible under M.R.E. 801(d)(1)(B)(ii) because the impeachment constituted an attack on another ground, when he should have determined that the interview was admissible under M.R.E. 801(d)(1)(B)(i) because the attack amounted to a charge of a recent fabrication or recent improper influence. *Norwood*, 79 M.J. at 656. Even if it were true that the military judge erred,

there could not be prejudice when the interview still was admissible. *See United States v. Bess*, 80 M.J. 1, 12 (C.A.A.F. 2020) (explaining that we affirm a military judge's ruling when " 'the military judge reached the correct result, albeit for the wrong reason' " (quoting *United States v. Robinson*, 58 M.J. 429, 433 (C.A.A.F. 2003))).

Second, Appellant complains that the majority of the interview was irrelevant to the Government's goal of rehabilitating EN as a witness and inconsistent with EN's testimony, rendering the interview inadmissible. Neither of these arguments is persuasive. As explained above, the Government offered the interview into evidence as a prior consistent statement in order to rebut the defense's attack that the Government had coached EN's testimony. The coaching claim was an attack on EN's entire testimony at trial regarding the alleged sexual assault, not to specific portions of her testimony. As a result, the entire substantive portion of EN's forensic interview, containing her full version of the events and given before she met with the Government (and thus prior to the point that any coaching would be possible), was admissible as a prior consistent account of the sexual assault. Additionally, the only inconsistencies that Appellant points to are two details from EN's testimony she did not mention during the interview: that Appellant apologized to her for the incident and the rest of the trip was awkward. The prior statement " 'need not be identical in every detail to the declarant's . . . testimony at trial' " for it to be " 'consistent' " under M.R.E. 801(d)(1)(B). *Finch*, 79 M.J. at 395 (alteration in original) (quoting *United States v. Vest*, 842 F.2d 1319, 1329 (1st Cir. 1988)). Accordingly, these two small additions do not change the fact that the interview was " 'for the most part consistent' and in particular, . . . 'consistent with respect to . . . fact[s] of central importance to the trial.' " *Id.* (alterations in original) (quoting *Vest*, 842 F.2d at 1329). Therefore, the interview was admissible as a prior consistent statement.

### III. Improper Argument

#### A. Facts

The second issue is whether the trial counsel committed prosecutorial misconduct during the court-martial by making improper arguments that prejudiced Appellant.

The trial counsel and assistant trial counsel, Lieutenant C.B. and Lieutenant Commander B.K., made numerous arguments that were, at best, impassioned.

During the court-martial, Lieutenant C.B. and Lieutenant Commander B.K. seemed to personally vouch for EN's credibility in both the opening and closing arguments by referring to her as an "innocent" child who had no reason to lie, claiming that she was telling the truth, and asserting that her family believed her. The defense objected to the comments about EN's family, and while the military judge overruled the objection, he did issue a curative instruction explaining that it was up to the members to evaluate the witnesses' credibility and testimony. Later, in the rebuttal closing argument, Lieutenant Commander B.K. repeatedly called Appellant a "child molester," going so far as to assert that "by saying that there are reasonable doubts in this case, defense is asking you to give child molesters a license to commit these crimes, because if you can't find [Appellant] guilty . . . the only way . . . a child molester could ever be convicted [is] if he is literally caught in the act." The defense did not object to those remarks and the military judge took no action.

Finally, Lieutenant C.B. continued this style of argument in the sentencing proceedings. During the Government's sentencing argument, she asserted that the defense would request a lenient sentence and, clearly opposing that notion, asked the members to consider what would happen "when you all return to your normal duties . . . . [A]nd someone asks you . . . . 'Wow, what did [Appellant] get for that?' Do you really want your answer to be 'nothing at all'?" Again, the defense did not object to this language and the military judge did not act upon it sua sponte.

Appellant raised numerous improper argument claims on appeal, but the CCA rejected most of them. *Norwood*, 79 M.J. at 662–67. However, the lower court did agree with Appellant that Lieutenant Commander B.K. made improper sentencing arguments by accusing the defense of requesting that the members give child molesters a "license" to commit this kind of crime and claiming that EN's family only declined to cooperate with the defense because they believed EN was telling the truth. *Id.* at 663–64. While the court said these arguments were improper and the military judge should have sustained

Appellant's objection to the latter and given a stronger cura-
tive instruction, it nonetheless concluded that the misconduct
was "isolated and brief," the military judge's instruction that
the members were to determine the witnesses' credibility
themselves was at least somewhat curative, and the errors
did not prejudice Appellant. *Id.* at 663–65.

## B. Law

A prosecutor proffers an improper argument amounting to
prosecutorial misconduct when the argument " 'overstep[s]
the bounds of that propriety and fairness which should char-
acterize the conduct of such an officer in the prosecution of a
criminal offense.' " *United States v. Fletcher*, 62 M.J. 175, 178
(C.A.A.F. 2005) (alteration in original) (quoting *Berger v.
United States*, 295 U.S. 78, 84 (1935)).

When the accused objects to an improper argument during
his court-martial, we review the issue de novo. *United States
v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019). In that de novo re-
view, we determine whether any error materially prejudiced
the appellant's substantial rights under Article 59, UCMJ, 10
U.S.C. § 859; *Fletcher*, 62 M.J. at 179. "We weigh three factors
to determine whether trial counsel's improper arguments
were prejudicial: (1) the severity of the misconduct, (2) the
measures adopted to cure the misconduct, and (3) the weight
of the evidence supporting the conviction." *Voorhees*, 79 M.J.
at 12 (internal quotation marks omitted) (citation omitted).
When a trial counsel makes an improper argument during
findings, "reversal is warranted only when the trial counsel's
comments taken as a whole were so damaging that we cannot
be confident that the members convicted the appellant on the
basis of the evidence alone." *United States v. Andrews*, 77
M.J. 393, 401–02 (C.A.A.F. 2018) (internal quotation marks
omitted) (citation omitted).

On the other hand, if the accused failed to object on this
basis during the court-martial, we review the matter for plain
error. *Id.* at 398. To prove plain error resulted from the trial
counsel's improper argument during the sentencing proceed-
ing, Appellant has the burden of establishing "(1) there was
error; (2) it was plain or obvious; and (3) the error materially
prejudiced a substantial right." *United States v. Marsh*, 70

M.J. 101, 104 (C.A.A.F. 2011) (internal quotation marks omitted) (citations omitted).

> In this context, material prejudice to the substantial rights of the accused occurs when an error creates "an unfair prejudicial impact on the [court members'] deliberations." [*United States v.*] *Knapp*, 73 M.J. [33,] 37 [C.A.A.F. 2014] ([first] alteration in original) (internal quotation marks omitted) (citation omitted). In other words, the appellant "must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343, 194 L. Ed. 2d 444 (2016) (internal quotation marks omitted) (citation omitted).

*United States v. Lopez*, 76 M.J. 151, 154 (C.A.A.F. 2017).

## *C. Analysis*

As an initial matter, two of the alleged improper arguments clearly do not merit relief. First, we reject Appellant's claim that trial counsel personally attacked him by referring to him as a "child molester." A child molester is "[s]omeone who interferes with, pesters, or persecutes a child in a sexual way, esp. when touching is involved." *Black's Law Dictionary* 302 (11th ed. 2019) (entry for "child molester"). Given that Appellant was prosecuted for and convicted of a sexual offense against a child, we agree with the Government that this language actually was a permissible characterization supported by the charge and the evidence. *See*, *e.g.*, *Voorhees*, 79 M.J. at 11 (noting that a trial counsel's "word choice" can be improper argument when it is a "personal attack on the defendant" but not when it is a "commentary on the evidence" (internal quotation marks omitted) (citation omitted)); *see also United States v. Bentley*, 561 F.3d 803, 811 (8th Cir. 2009) (deciding that when there was "strong" evidence that the appellant had "committed sexual offenses against young girls," then "[t]he government's description of [the appellant] as a sexual predator was not plain error"). Second, it is true that the military judge erred in overruling defense counsel's objection to the one supposedly improper argument to which Appellant objected during the court-martial: that EN's family believed that she was telling the truth about this matter. But while this claim was irrelevant and inappropriate, it did not

amount to severe misconduct, particularly because no one would expect her family not to believe her and it only made up a few lines of rebuttal argument. *Cf. Voorhees*, 79 M.J. at 12 (noting that "trial counsel's improper argument was severe" when "[t]he misconduct was sustained throughout argument and rebuttal, occurring with alarming frequency"). Also, the defense immediately objected to the argument and, although the military judge overruled the objection, he issued a curative instruction explaining that the members alone are to judge witnesses' credibility. " 'We presume, absent contrary indications, that the panel followed the military judge's instructions . . . .' " *United States v. Short*, 77 M.J. 148, 151 (C.A.A.F. 2018) (quoting *United States v. Sewell*, 76 M.J. 14, 19 (C.A.A.F. 2017)). Accordingly, Appellant was not prejudiced by these arguments.

Although Appellant did not object to the other improper arguments when the trial counsel made them, those arguments were more problematic.

Lieutenant C.B. and Lieutenant B.K. clearly committed misconduct during findings by repeatedly vouching for EN, a method of argument that we have explicitly prohibited. *Voorhees*, 79 M.J. at 11–12; *Fletcher*, 62 M.J. at 180. Trial counsel "are military officers and should conduct themselves accordingly," a standard that these trial counsel failed to meet under our precedent regarding improper argument. *Voorhees,* 79 M.J. at 14. However, while those improper arguments constituted obvious error, there was no material prejudice to Appellant during findings. EN testified credibly that Appellant sexually abused her and, despite strenuous efforts to undermine her credibility, the defense failed to offer a plausible reason as to why EN would have fabricated these allegations. Therefore, Appellant cannot show a reasonable probability that he would not have been convicted in the absence of these improper arguments. *See Molina-Martinez*, 136 S. Ct. at 143.

Instead, the prejudice arises from the sentencing proceeding. In the sentencing argument, Lieutenant C.B. pressured the members to consider how their fellow servicemembers would judge them and the sentence they adjudged instead of the evidence at hand. This Court has repeatedly held that "a court-martial must reach a decision based only on the facts in evidence." *Fletcher*, 62 M.J. at 183 (citing *United States v.*

*Bouie*, 9 C.M.A. 228, 233, 26 C.M.R. 8, 13 (1958)). Arguing an inflammatory hypothetical scenario with no basis in evidence amounts to improper argument that we have repeatedly, and quite recently, condemned. *See Voorhees*, 79 M.J. at 14–15. Furthermore, neither the defense counsel nor the military judge took action to address the issue themselves. The defense counsel could have done more to meet their "duty to the[ir] client[s] to object to improper arguments early and often," as could have the military judge to fulfill his "*sua sponte* duty to [e]nsure that an accused receives a fair trial" but because they did not, there was a total lack of curative measures to redress this misconduct. *Id.* at 14–15 (alterations in original) (internal quotation marks omitted) (citations omitted).[2]

In addition to meeting the first two prongs of the plain error test by showing that the improper argument amounted to error that was plain or obvious, Appellant also has met his burden to show a reasonable probability that there would have been a different outcome to the sentencing proceeding had this improper argument not occurred. *See Marsh*, 70 M.J. at 107. As our predecessor court said, "[t]rial counsel may properly ask for a severe sentence, but [they] cannot threaten the court members with the specter of contempt or ostracism if they reject [their] request." *United States v. Wood*, 40 C.M.R. 3, 9 (C.M.A. 1969). Lieutenant C.B. demanded the members impose a sentence of a dishonorable discharge, confinement for four years, and reduction to E-1, while Appellant's counsel implored the members to limit the sentence to confinement for one year. Under the circumstances, we conclude that Appellant established that the trial counsel's egregious attempt to pressure the members resulted in a reasonable probability that the sentence adjudged was greater than it would have been otherwise. Because "we cannot be confident that [Appellant] was sentenced on the basis of the evidence alone," Lieutenant C.B.'s improper sentencing argument caused material prejudice to Appellant such that he is

---

[2] We do note, however, that Appellant raised an ineffective assistance of counsel claim before the CCA based on the defense counsel's failure to object to the improper argument, but the court decided that relief was not warranted because it had determined that the "arguments were either not improper, or if they were, they were not prejudicial to [Appellant]." *Norwood*, 79 M.J. at 666.

entitled to relief. *Marsh*, 70 M.J. at 107 (internal quotation marks omitted) (citation omitted).

## Judgment

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed as to findings, but is reversed as to the sentence. The sentence is set aside and the record is returned to the Judge Advocate General of the Navy. A sentencing rehearing is authorized.

Judge OHLSON, concurring in the result.

I write separately in order to discuss certain important aspects of this case as they relate to the provisions of Military Rule of Evidence (M.R.E.) 801(d)(1)(B), and to sound a note of caution to the field about the applicability of this decision to future cases.

To begin with, I believe the majority is remiss in not squarely acknowledging that the military judge was wrong in applying the provisions of M.R.E. 801(d)(1)(B)(ii) to a key facet of this case. Specifically, the military judge ruled that because defense counsel had implied that the victim's in-court testimony was the product of improper prosecutorial coaching, M.R.E. 801(d)(1)(B)(ii) applied to the question of whether a videotape of the victim's prior statement to forensic investigators was admissible at trial. As demonstrated below, the military judge was clearly mistaken about the applicability of this particular provision, and the majority should affirmatively concede this point.

M.R.E. 801(d)(1)(B)(i) provides, in pertinent part, that a prior statement is not hearsay if it is consistent with the witness's in-court testimony and is offered "to rebut an express or implied charge that the declarant recently fabricated it *or acted from a recent improper influence*." (Emphasis added). On the other hand, M.R.E. 801(d)(1)(B)(ii), which was the subpart cited by the military judge, provides that a prior statement is not hearsay if it is consistent with the witness's in-court testimony and is offered to rehabilitate the declarant's credibility as a witness "when attacked *on another ground*." (Emphasis added).

Here, the military judge concluded that the defense counsel had implied that the victim's in-court testimony was the product of improper prosecutorial coaching but then stated that prosecutorial coaching is an attack on another "ground." However, as we emphasized in *United States v. Finch*, the reference in M.R.E. 801(d)(1)(B)(ii) to "another ground" means a ground *other than* a ground listed in M.R.E. 801(d)(1)(B)(i). 79 M.J. 389, 395–96 (C.A.A.F. 2020). A charge of prosecutorial coaching falls under the grounds listed in M.R.E.

801(d)(1)(B)(i). Thus, the proper basis for analyzing the admissibility of the victim's videotaped statement was M.R.E. 801(d)(1)(B)(i) rather than M.R.E. 801(d)(1)(B)(ii).

This is not an inconsequential point. As the United States Navy-Marine Corps Court of Criminal Appeals (CCA) astutely observed in this case:

> This distinction is important because rebutting a challenge of recent fabrication [under M.R.E. 801(d)(1)(B)(i)] logically permits a more expansive use of prior statements to show that nothing substantial has changed in the declarant's testimony. On the other hand, rehabilitating the credibility of the declarant [under M.R.E. 801(d)(1)(B)(ii)] may require something more precisely related to explaining or rebutting the specific manner of the attack on the witness'[s] credibility.

*United States v. Norwood*, 79 M.J. 644, 655 (N-M. Ct. Crim. App. 2019) (citations omitted).

Next, I diverge from the majority's apparent viewpoint that the military judge's admission of the *entire* substantive portion of the interview—rather than discrete sections of that interview—was an appropriate default position. Specifically, I believe it is a close question whether the military judge abused his discretion in deciding that, in the course of questioning the victim, the defense counsel had flung open the door so wide that the Government could walk through it with the entire substantive portion of the victim's videotaped statement. My concerns are as follows.

Consistent with our recent unanimous decision in *Finch*, when ruling on an M.R.E. 801(d)(1)(B) issue such as this one, a military judge may admit at trial only those *portions* of a prior statement that are *consistent* with a witness's in-court testimony and that are *relevant to the express purpose of rebutting the allegation of a recent improper influence*. *Finch*, 79 M.J. at 396. Thus, if just a segment of a prior statement can adequately rebut an allegation that a witness was affected by a recent improper influence, then *only* that segment may be admitted at trial.

In those instances where a defense counsel alludes to a purported *inconsistency* between a witness's in-court testimony and a prior statement, the task of identifying the admissible portion or portions of that prior statement is relatively easy. If a witness said "x" at trial, the military judge should admit only those portions of the prior statement where the witness similarly said "x" in the prior statement.[1] However, where, as here, a defense counsel alludes to a purported *omission* (i.e., the witness said "x" during in-court testimony but did not mention "x" in the prior statement), the situation is far more tricky. Simply stated, there is no specific "x" to be found in the proverbial haystack that would directly rebut the defense allegation that this omission was reflective of a recent improper influence. Therefore, in such a scenario it is incumbent upon this Court to grant a military judge considerable leeway in deciding just how much of the witness's prior consistent statement needs to be admitted to demonstrate to the panel members that the omission was the product of, say, a simple oversight on the part of the witness or the failure of an interviewer to ask the witness a question that was reasonably likely to elicit a relevant response. For these reasons, the military judge did not abuse his discretion in deciding to admit the entire substantive portion of the victim's prior statement—although it is near the tipping point. However, I am not as confident as the majority appears to be that the military judge handled this issue in an exemplary manner for the following four reasons.

First, the record suggests that the military judge did *not* adequately consider whether the videotaped segment played for the panel members could have been significantly pared back while still achieving the Government's legitimate goal of rebutting the defense counsel's contention that there had been improper prosecutorial coaching. Specifically, in addressing the victim's omission from her videotaped statement

---

[1] For this reason, to the extent the Government argues that the prior videotaped statement was also admissible under the provisions of M.R.E. 801(d)(1)(B)(ii), because defense counsel additionally sought to impeach the victim based on a few alleged inconsistencies in her in-court testimony, this approach does not justify the military judge's decision to admit the *entire* substantive portion of the video.

that after the sexual abuse incident the rest of her vacation stay with Appellant was "awkward," I believe the military judge erred by failing to admit at trial *only those portions* of the victim's prior statement that dealt with the victim and Appellant's interactions after the sexual abuse—and not the sexual abuse itself. However, I hesitantly conclude that this misstep did not rise to the level of an abuse of discretion.

Second, military judges must place the burden on the moving party—here, the Government—both to identify the consistent portions of the prior statement *and* to demonstrate the relevancy of those portions to the stated aim of rebutting the aspersions cast on a witness's credibility. *Finch*, 79 M.J. at 396. Here, by admitting the entire substantive portion of the videotape without adequately putting the prosecution through these required steps the military judge allowed into evidence some *in*consistent statements made by the victim and some other statements that were not directly relevant to rebutting the specific omissions raised by the defense counsel.

Third, the majority minimizes the harmful effect of admitting the entire substantive portion of the victim's videotaped statement by noting that the inconsistent portions represented merely "two small additions" to the victim's testimony. Respectfully, this misses an important point. As the Drafters' Analysis of M.R.E. 801(d)(1)(B) makes clear, beyond preventing the introduction of evidence that was not adduced at trial, a fundamental evil to be avoided in situations such as this one is the "impermissible bolstering" of the witness. *Manual for Courts-Martial, United States*, Analysis of the Military Rules of Evidence app. 22 at A22-61 (2016 ed.); *Finch*, 79 M.J. at 396. In the minds of triers of fact, repetition can be confused with reliability. Therefore, the very act of admitting the entire substantive portion of the videotape carried the risk of prejudicing Appellant, and that is precisely why the strictures on hearsay, and the hurdles imposed by M.R.E. 801(d)(1)(B), must be strictly observed.

Fourth and finally, on redirect examination the trial counsel in this case had the following exchange with the victim:

> Q: . . . I just want to follow up on some of defense counsel's questions. Defense counsel asked you a lot of questions about meeting with us. What is the one

thing, the only thing, that we told you you [sic] absolutely had to say in this courtroom?

A: To tell the truth.

Q: Defense counsel also said that you didn't— he implied that you hadn't told the forensic interviewer about the rest of the trip in Hawaii and how it was awkward. That's correct isn't it?

A: Yes.

Q: Isn't it also true that the forensic interviewer didn't ask you what the rest of the trip was like?

A: Yes.

In my view, the military judge should have more fully considered whether this exchange between the trial counsel and the victim—standing alone—was sufficient to rebut the defense counsel's allegation that the witness's in-court testimony was the product of improper prosecutorial coaching. Indeed, I believe this point should have been factored into the military judge's M.R.E. 403 balancing test in deciding whether the probative value of introducing the entire prior consistent statement was substantially outweighed by the risk of creating unfair prejudice (through repetition of the allegations), causing undue delay, wasting time, and presenting cumulative evidence.

For these reasons, unlike the majority I believe that the issue presented in this case is a very close question. Even though we now hold that the military judge's decision to admit the entire substantive portion of the videotaped statement did not rise to the level of an abuse of discretion, I do not believe this case should be seen as an exemplar of how military judges should approach these types of issues in the future. Generally speaking, a military judge's decision to admit a prior consistent statement *in its entirety* is fraught with peril. *See Finch*, 79 M.J. at 398. Indeed, such a step may result in prejudice to an accused of such a magnitude that it merits reversal of a conviction. Therefore, in regard to Issue I, although I ultimately agree with the majority that the military judge *did not abuse his discretion* in admitting the entire substantive portion of the videotape, I believe it is prudent to sound a note of caution to the field about the applicability of this decision to future cases with different facts.

In regard to Issue II, I agree with the majority that Appellant's sentence should be set aside with a sentence rehearing authorized.

Judge SPARKS, concurring in part and dissenting in part and in the result.

I concur with the majority's conclusion that the recorded interview was properly admissible as a prior consistent statement under Military Rule of Evidence (M.R.E.) 801(d)(1)(B)(i). However, I cannot join the majority's resolution of the improper argument on sentencing. In my view, Appellant has not carried his burden under the plain error standard to show that, based on trial counsel's argument regarding what the members' coworkers might think, a reasonable probability exists that the sentence adjudged was greater than it would have been otherwise.

The majority relies solely upon the sentences requested by the parties as evidence of prejudice. The Government argued for a sentence of four years of confinement, reduction to the grade of E-1, and a dishonorable discharge while the defense argued for no more than one year of confinement and no punitive discharge. However, this rationale ignores the sentence that the members actually adjudged. Appellant was sentenced to eighteen months of confinement, a reduction to the grade of E-1, and a dishonorable discharge. The term of adjudged confinement is closer to what the defense requested than what the Government requested of the members.

Further, it is unrealistic, under the facts and circumstances of this case, to conclude that Appellant would not have been adjudged a dishonorable discharge. The fifteen-year-old victim testified on the merits and gave an in-person unsworn statement at sentencing. During the Government's case on the merits, the members heard, and apparently found credible, the victim's detailed description of Appellant's conduct against her. On sentencing, the victim described how Appellant's offense against her had left her severely emotionally and mentally affected.

Finally, we should take into account that defense counsel did not object to the trial counsel's sentencing argument. Defense counsel in this case was best situated to determine which parts of trial counsel's argument were worth objecting to and which were not. The majority has already pointed out that earlier in the court-martial defense counsel seemed skilled enough to recognize when and on what basis an

objection should be lodged. In the absence of an ineffectiveness claim before this Court, defense counsel's failure to object here raises the possibility that, from defense counsel's perspective, trial counsel's inappropriate comments may have had less of an effect on the members than the majority believes.

My concern is that concluding under plain error that there was prejudice in a case such as this one suggests this Court's lack of confidence in the skills and abilities of military defense lawyers to try their own cases. I certainly agree with the majority that trial counsel's statements were otherwise plain and obvious error. I also agree with the majority's admonition to defense counsel and military judges generally. However, I am simply not convinced that Appellant met his burden to show material prejudice to his substantial rights. It might have been a different matter had counsel objected and been overruled without a curative instruction to the members. Since that is not the case here, I must respectfully dissent.